**Dennis E. MacQUARRIE, Plaintiff,**

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 85–4437–Y.**

United States District Court,
D. Massachusetts.

July 18, 1986.

---

William G. Rehrey, Boston, Mass., for plaintiff.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Dennis MacQuarrie ("MacQuarrie") brought this action to obtain judicial review of a final decision of the Secretary of Health and Human Services (the "Secretary") reducing MacQuarrie's disability insurance benefits as a result of his receipt of a lump sum worker's compensation settlement. The Secretary found that $13,500 of the $25,000 lump sum settlement was subject to the offset provisions of the Social Security Act. MacQuarrie alleges that this decision is "not in accordance with law."

Prior to August, 1981, MacQuarrie worked as a painter and wallpaperer. He has not worked since that time. On August 10, 1982, MacQuarrie filed an application for disability insurance benefits. On July 29, 1983, an Administrative Law Judge found MacQuarrie disabled within the meaning of the Social Security Act and entitled to benefits as of August 21, 1981. In calculating MacQuarrie's disability insurance benefits, the Social Security Administration determined that his benefits had to be reduced as a result of his receiving a $25,000 worker's compensation lump sum settlement. The $25,000 was distributed as follows: $4,000 for legal fees to William Rehrey, $8,000 to MacQuarrie's wife for "release of her inchoate rights," and the rest to MacQuarrie. MacQuarrie's money was allocated $1,000 for future medical expenses, $1,000 for loss of bodily function, $2,000 for bodily disfigurement, $1,500 for future rehabilitation, and $7,500 as a lump sum for future periodic payments. The Social Security Administration initially found $6,000 of the $25,000 to be excludable under the provisions of 20 C.F.R. § 404.408(d). On March 28, 1985, an Administrative Law Judge considered the case *de novo* and determined that MacQuarrie was entitled to an exclusion of $9,500 prior to imposition of the offset provisions. On October 2, 1985, the Appeals Council denied MacQuarrie's request for review of the decision of the Administrative Law Judge, and that decision became the final decision of the Secretary. MacQuarrie timely filed his complaint in this Court to appeal the Secretary's decision.

### I.

This matter comes to decision in an unfortunate posture. The complaint in this case was filed on December 2, 1985, and was signed "Dennis E. MacQuarrie, Pro se." The evidence suggests that MacQuarrie is not a pro se litigant, however. The civil cover sheet, which in this Court is filed along with the complaint, lists "William G. Rehrey, Esq." as plaintiff's attorney, and was signed by Mr. Rehrey as "attorney of record." The record also indicates that Mr. Rehrey paid the $60 dollar filing fee. Mr. Rehrey, who represented MacQuarrie at the agency level, is not a member of the Bar of this Court. This notwithstanding, it is apparent that Mr. Rehrey has undertaken to represent MacQuarrie in these proceedings.

On February 25, 1986, the Court issued a Procedural Order in the case. The order stated that as there was no factual dispute the complaint would be treated as a motion for summary judgment, and the case taken under advisement, without further notification, on April 28, 1986 on the pleadings, transcripts, briefs, and memoranda then on file. Because Mr. Rehrey was listed on the docket sheet as plaintiff's attorney of record, a copy of the Procedural Order was sent to him.

On April 22, 1986, six days before the case was to come under advisement, a member of this Court's Bar submitted a motion, in accordance with former Local Rule 6(b), requesting Mr. Rehrey be granted leave to participate in this case. Attached to the motion was a certificate, signed by Mr. Rehrey, certifying that Rehrey is a member in good standing of the

Massachusetts and District of Columbia Bars. That motion for admission pro hac vice is still pending.

On April 28, 1986, the United States submitted its brief in support of the Secretary's decision. Neither Mr. Rehrey, the member of the Bar who moved for Rehrey's admission, nor Mr. MacQuarrie himself have submitted any papers in support of MacQuarrie's appeal. Indeed, because of the demands of the Court's crowded docket, Mr. Rehrey has, in effect, been allowed an extra month and a half to submit a brief on his client's behalf. Yet, as the Court comes to its decision today, it still is without the benefit of a brief on MacQuarrie's behalf. To that extent, Mr. Rehrey's client has been ill served.

Surely Mr. Rehrey will not now be heard to argue that he did not submit a brief because of his lack of admission pro hac vice. To begin with, filing the brief apparently would be the first thing Mr. Rehrey felt himself precluded from doing in this case as a result of his not being admitted. Despite the fact that his client signed the complaint as a pro se litigant, it is clear that, from the outset, Mr. Rehrey intended to practice before this Court notwithstanding his lack of admission. Moreover, even if Mr. Rehrey thought himself unable to submit the brief, he had a duty to his client to find a lawyer who would submit the brief, or at least to advise MacQuarrie to submit something in support of his "pro se" claim. In any event, to do nothing was not the proper course. The remarkable thing about this entire matter is that it appears that at all times Mr. Rehrey was fully qualified to gain admission to this Court's Bar, and that all he needed to do was file an application with the Clerk. The Court cannot even speculate on what reasons Mr. Rehrey had for not filing an application for admission. That is private to him. But if Mr. Rehrey wishes to continue to represent clients with business before this Court, he had best seek admission promptly.

That said, the Court thinks it inappropriate to further consider Mr. Rehrey's con-

duct in addressing the merits of his client's claim. The Clerk of the Court is ordered to mail copies of this opinion by certified mail, return receipt requested, to MacQuarrie's home address, the Board of Bar Overseers of the Massachusetts Supreme Judicial Court, and the United States Attorney, who is authorized under the Local Rules to object to the application of any attorney seeking admission to this Court's Bar.

## II.

The Social Security Act provides that for any month in which an individual is entitled to both disability insurance benefits and periodic workmen's compensation benefits, his disability benefits shall be reduced so that the total of his benefits from the two sources does not exceed 80% of his average current earnings. 42 U.S.C. § 424a(a). The Act further provides that:

> If any periodic benefit for a total or partial disability ... is payable on other than a monthly basis (excluding a benefit payable as a lump sum, *except to the extent that it is a commutation of, or a substitution for, periodic payments*), the reduction under this section shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section. 42 U.S.C. § 424a(b) (emphasis added)

Thus, if an eligible individual receives a lump sum payment that is intended as a substitute for periodic payments, that lump sum must be offset against his disability benefits. *Carnevali v. Heckler*, 616 F.Supp. 1500, 1504 (W.D.Pa.1985).

The Secretary's regulation implementing these so called offset provisions is found at 20 C.F.R. § 404.408 (1985). Subsection (d) of that Regulation specifies that "amounts paid or incurred, or to be incurred, by the individual for medical, legal, or related expenses ... are excluded in computing the reduction.... Any expenses not established by evidence required by the Administration or not reflecting a reasonable estimate of the individual's fu-

ture expenses will not be excluded." This regulation puts the burden on the claimant to establish excludability from the offset rules of the statute.

### III.

■ Assuming that MacQuarrie would advance before this Court the same arguments he presented to the Administrative Law Judge, only one of his arguments is sufficiently substantial to warrant discussion here.[1] MacQuarrie argued to the Administrative Law Judge, and asserts in Count III of his complaint here, that the $8,000 paid to his wife should be excluded from the lump sum before application of the offset rules. The Administrative Law Judge found that the $8,000 received by MacQuarrie's wife was a substitute for periodic payments to MacQuarrie, and thus did not subtract them from the lump sum. Because the conclusion of the Administrative Law Judge was based on an erroneous interpretation of Massachusetts law, the case must be remanded for further development of the facts.

■ Under Massachusetts law at the time of the lump sum settlement, a wife of an injured employee had two potential causes of action against her husband's employer. Under the rule of *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980), the wife of an injured employee could bring a common law action for loss of consortium against the employer. *Id.* at 519–30, 413 N.E.2d 690. Alternatively, the wife of an employee who died as a result of work related injuries generally was entitled to statutory death benefits. Mass.Gen.Laws ch. 152, § 31.

In his decision the Administrative Law Judge focused only on Mrs. MacQuarrie's statutory rights. He apparently did so because the first page of the settlement agreement provides that Mrs. MacQuarrie releases the employer from liability "under G.L. Chapter 152 the so called Workmen's

Compensation Act." The Administrative Law Judge concluded that because the settlement form was entitled "Agreement for Redeeming Liability by Lump Sum under G.L. Ch. 152, § 48," he had to "assume that the claimant's wife's rights ... are connected to section 48." (Tr. 13) Since § 48 simply allows the insurer and the employee to agree to redeem the periodic payment liability for a lump sum, the Administrative Law Judge concluded that the "$8,000 received by the claimant's wife was, in fact, a substitute for periodic payments to the claimant." *Id.* The Administrative Law Judge did not, however, consider Mrs. MacQuarrie's potential rights for death benefits under § 31. By focusing on § 48 to the exclusion of the rest of the chapter, the Administrative Law Judge committed error. He ended his analysis too soon, and too quickly ruled out the possibility that the $8,000 properly was excludable. If, for example, there was a reasonable potential that MacQuarrie might die from his injuries, it would have been reasonable for the insurer to consider potential liability under § 31. The Administrative Law Judge would then have to determine whether on the facts of this case § 31 benefits must be offset against disability benefits under the Act.

■ Moreover, on remand the Administrative Law Judge should also consider whether the amount allocated to Mrs. MacQuarrie was intended to settle potential *Ferriter* type claims. Although the release on the first page of the settlement agreement speaks only of chapter 152, later sections of the document suggest the waiver was not so limited. On page two, the agreement explains that Mrs. MacQuarrie's money is "in release of her inchoate rights arising from the employee's injury." This language arguably covers a *Ferriter* type loss of consortium claim in addition to the statutory claims. The record is not sufficiently developed for this Court to deter-

---

1. Below, MacQuarrie argued that the offset provisions did not apply to him, and, in any event, are unconstitutional. As to applicability the Court adopts completely the analysis of the Ad-

ministrative Law Judge. As to the constitutionality of the offset provisions, that was answered by the Supreme Court in *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

mine whether it would be appropriate under the circumstances of this case to attribute the $8,000 to Mrs. MacQuarrie's loss of consortium. For example, it is not clear on this record whether MacQuarrie and his wife actually live together. Mrs. MacQuarrie did not attend the initial disability hearing and no dependents are listed on MacQuarrie's settlement agreement. Whether the MacQuarries in fact live together would go to the reasonableness of an $8,000 allocation for loss of consortium. In addition, if the MacQuarries live apart this would make more speculative her § 31 claim, which requires a shared residence at the time of death. But even if the MacQuarries do live together, that fact cuts both ways. On the one hand, the likelihood that Mrs. MacQuarrie would have a valid claim against the employer is increased. On the other hand, the potential for a sham allocation of proceeds between the husband and wife is also increased.

■■■ The more complete development of the facts surrounding the $8,000 payment to Mrs. MacQuarrie will provide the reviewing court with the full record essential to deciding the delicate question of statutory interpretation presented here. Whether that portion of a lump sum settlement earmarked for a claimant's spouse should be offset against the claimant's disability benefits is a question of apparent first impression.[2] The question implicates competing considerations. It cannot be that Congress intended that the Secretary's right to offset lump sum payments should be conclusively determined by the private arrangements between claimants and their employers' insurers. If those private arrangements were to control, there would be an incentive for sham allocations to a spouse of money which would ultimately end up as part of the claimant's household resources. However, it also cannot be that Congress intended "that a person's disability benefits be offset by money that is not actually his." *Worley v. Harris,* 666 F.2d

417, 421 (9th Cir.1982). Thus, on remand it will be for the Administrative Law Judge to determine in the first instance what portion, if any, of the lump sum settlement reasonably was attributable to the settlement of Mrs. MacQuarrie's spousal rights. The $8,000 figure agreed upon by the insurer and the MacQuarries is, at best, evidence of that amount. In addition, the Administrative Law Judge may consider, among other things, the reasonableness of the amount allocated the employee in light of the net present value of the periodic payments to which the employee was entitled; the reasonableness of the amount allocated to the spouse in light of the amount allocated to the employee; the reasonableness of the amount allocated the employee in light of the seriousness of his injuries; the likely amount the spouse might recover in some future statutory or common law proceeding, discounted by the probability of success; and finally, the reasonableness of the amount allocated the spouse in light of settlements entered into by other similarly situated spouses. No doubt the Secretary's task on remand will not be an easy one. It may be that he will find fairness best served by promulgating regulations which specify presumptive allocations under certain circumstances, much as has already been done in the case of the Grid. 20 C.F.R. Part 404, Subpart P, Appendix 2 (1985). How he ultimately determines the amount is, of course, not this Court's primary concern. Judicial review is limited, and deference will be paid to the Secretary's allocation of a lump sum settlement unless it is unreasonable. Only after a more complete development of the facts in this case, and the Secretary's initial allocation of the settlement between MacQuarrie and his wife, can this Court determine the applicability of the offset provisions.

■■■ The Administrative Law Judge in his decision, and the United States in its brief, assumed that § 404.408(d) of the Secretary's Regulations is relevant to deter-

---

**2.** *Worley v. Harris,* 666 F.2d 417 (9th Cir.1982) is a somewhat different case. There the claimant argued that his wife had "some interest" in a

$33,000 settlement paid solely to him. Here, the parties specifically agreed what portion was to be paid directly to the spouse.

mining the proper treatment of amounts allocated to Mrs. MacQuarrie. It is not. That section has to do with an employee's "medical, legal, or related" expenses. As such it was relevant in this case only in excluding the $9,500 dollars of the settlement allocated to such expenses. In no event would the $8,000 paid to Mrs. MacQuarrie constitute an "expense" incurred by MacQuarrie. Even assuming *arguendo* that the $8,000 was the proper amount allocated to the settlement of Mrs. MacQuarrie's claims, it would still "fall outside the scope of 20 C.F.R. § 404.408(d)." *Worley v. Harris, supra* at 421. What is at issue here is what part of the lump sum is a "substitute for, periodic payments." 42 U.S.C. § 424a(b). Under the statute the Secretary is authorized to offset against the claimant's disability benefits only that part of a lump sum settlement that is a substitute for periodic payments.

In summary, the decision of the Secretary to include the $8,000 in the amount offset against benefits was not supported by substantial evidence. This is not to say that upon further review any of that money must necessarily be excluded. Rather, the Secretary's initial inquiry into whether the $8,000 was a substitute for the claimant's periodic payments was too abbreviated to satisfy judicial review. For this Court properly to review the Secretary's decision a more complete record is necessary.

Accordingly, this case is REMANDED for further proceedings consistent with this opinion.