**Albert E. DAVIDSON, Plaintiff, Appellee,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant, Appellant.**

**No. 90–2190.**

United States Court of Appeals, First Circuit.

Heard May 6, 1991.

Decided Aug. 21, 1991.

---

Steve Frank, Atty., Appellate Staff, Civ. Div., Dept. of Justice, with whom William Kanter, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., and Jeffrey R. Howard, U.S. Atty., Concord, N.H., were on brief, for defendant, appellant.

Elizabeth R. Jones with whom Moquin & Daley, P.A., Manchester, N.H., were on brief, for plaintiff, appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES,* District Judge.

BOWNES, Senior Circuit Judge.

The Secretary of Health and Human Services ("the Secretary") appeals the decision of the district court reversing the Social Security Administration's ("SSA") reduction of the plaintiff's social security disability benefits pursuant to 42 U.S.C. § 424a, the "offset" provision. Specifically, the Secretary challenges the court's exclusion of the plaintiff's permanent impairment award under N.H.Rev.Stat.Ann. ("RSA") 281:26 from the offsettable amount. For the reasons that follow, we reverse.

## I. BACKGROUND

In May 1985 plaintiff Albert E. Davidson was awarded weekly worker's compensation benefits pursuant to RSA 281:23 in the amount of $208 per week for a work-related injury.[1] One year later the plaintiff settled his worker's compensation case for a lump sum of $17,000. According to the settlement breakdown the total amount represented $4,368 ($208 per week for twenty-one weeks) for lost wages under RSA 281:23; $1,000 for future medical bills; and $11,632 for permanent partial impairment under RSA 281:26.

In September 1987 plaintiff was determined to be eligible for retroactive disability insurance benefits under the Social Security Act, 42 U.S.C. § 423 ("the Act"). When SSA learned of the plaintiff's lump sum worker's compensation award, it informed him that, pursuant to 42 U.S.C. § 424a,[2] that award would be offset

---

* Of the District of Rhode Island, sitting by designation.

1. Although the record does not disclose the nature of the plaintiff's injury, we were advised by his counsel at oral argument that he suffered a partial loss of the use of his legs.

2. 42 U.S.C. § 424a, "Reduction of disability benefits," provides in pertinent part:

> If for any month prior to the month in which an individual attains the age of 65—

> (1) such individual is entitled to benefits under section 423 of this title, and
> (2) such individual is entitled for such month to periodic benefits on account of such individual's total or partial disability (whether or not permanent) under—
> ... a workmen's compensation law or plan of the United States or a State ...
> ....
> the total of his benefits under section 423 of this title for such month and of any benefits under section 402 of this title for such month

against his disability benefits, deducted at a weekly rate of $208. Plaintiff challenged this determination, and on reconsideration, SSA reduced the offsettable amount by $3,400 for attorney's fees, leaving a balance of $13,600 to be offset against social security benefits. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), claiming that the $11,632 portion of his settlement for permanent partial impairment was not subject to offset. The ALJ issued a decision holding that the entire $13,600 represented a payment in lieu of weekly worker's compensation benefits and must therefore be offset against plaintiff's social security benefits. This decision was affirmed by the Appeals Council.

Plaintiff brought this action in district court, claiming that the Secretary erred in including in the offset amount that part of the lump sum award representing compensation for permanent bodily loss under RSA 281:26. The district court adopted the reasoning in *Lemire v. Secretary of Health and Human Services*, 682 F.Supp. 102 (D.N.H.1988), which had decided the identical issue. The court held that "disability" as used in the federal offset provision, which requires reduction of social security benefits when the claimant receives "disability" benefits under a worker's compensation law, 42 U.S.C. § 424a(a), applies only to benefits received for the loss or impairment of a claimant's earning power. Concluding that plaintiff's award for partial permanent bodily loss pursuant to RSA

281:26 was not an award to compensate for loss of earning capacity, the district court held that the Secretary had erred in offsetting those benefits under § 424a and granted plaintiff's motion to reverse the Secretary's decision.

## II. DISCUSSION

■ 42 U.S.C. § 424a(a) requires that social security disability benefits paid pursuant to 42 U.S.C. § 423 be reduced for any month during which the individual receives "periodic benefits on account of such individual's total or partial disability (whether or not permanent) under … a workmen's compensation law or plan of the United States or a State…." Where an individual receives both worker's compensation benefits and social security benefits, the total benefits received may not exceed eighty percent of his predisability income. 42 U.S.C. § 424a(a).[3] The offset provision was enacted to prevent the duplication of disability benefits that had resulted in payments in excess of predisability earnings, which was perceived by Congress to have "reduced the incentive of the worker to return to the job, and impeded the rehabilitative efforts of the state programs." *Richardson v. Belcher*, 404 U.S. 78, 82–83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971).

All of plaintiff's benefits were awarded under the New Hampshire worker's compensation law. One portion, not at issue here, was awarded under RSA 281:23, "Compensation for Total Disability."[4] The

---

based on his wages and self-employment income shall be reduced (but not below zero) by the amount by which the sum of—
    (3) such total of benefits under section 423 and 402 of this title for such month, and
    (4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,
exceeds the higher of—
    (5) 80 per centum of his "average current earnings", or
    (6) the total of such individual's disability insurance benefits under section 423 of this title for such month and of any monthly insurance benefits under section 402 of this title for such month based on his wages and self-employment income, prior to reduction under this section.

**3.** Lump sum settlements, if they substitute for periodic payments, are also subject to offset. 42 U.S.C. § 424a(b).

**4.** RSA 281:23 provides:
    An employer subject to this chapter, or his insurance carrier, shall pay to an employee sustaining a personal injury as defined in RSA 281:2, V, compensation during a period of total disability, but not including the first 3 days thereof, unless such disability continues for 7 days or longer, as follows:
    I. If an employee's average weekly wage is 40 percent or less of the state's average weekly wage, weekly compensation shall be the full amount of said employee's average weekly wage.
    II. If an employee's average weekly wage is over 40 percent of the state's average week-

remainder, exclusive of attorney's fees and future medical expenses, was awarded under RSA 281:26, "Scheduled Permanent Impairment Award."[5] It is this award that plaintiff claims, and the district court held, is exempt from the federal offset provision. Plaintiff relies on the *Lemire* decision, which held that New Hampshire distinguishes between "disability" awards for loss of earning ability and "scheduled" awards for the loss of a body part, only the former of which are to be offset under § 424a. *See Lemire,* 682 F.Supp. at 104–105. Based on our interpretation of New Hampshire law, we disagree.[6]

In the leading case of *Ranger v. New Hampshire Youth Development Center,* 117 N.H. 648, 377 A.2d 132 (1977), Chief Justice Kenison analyzed the state worker's compensation statute in a comparison of the two provisions pertinent here. Ranger had suffered a work-related injury to his eye in 1966, for which he received worker's compensation benefits for lost wages under section 23. Then, in 1975, his doctor determined he had suffered permanent loss of sight, entitling him to a scheduled permanent impairment award under section 26. *Id.* 377 A.2d at 133. The sole issue in the case was which date—when the injury occurred or when the subsequent loss of the injured body part was disclosed—was the reference point from which to calculate a claimant's benefits. *Id.* It was in the context of arriving at the latter as the operative date that the New Hampshire Supreme Court explained that scheduled permanent impairment awards are "in addition to and wholly independent of" the other, i.e. "disability," benefits provided in the statute. *Id.* 377 A.2d at 134. After discussing the history of the scheduled benefits provision, the *Ranger* court stated, "It is now an additional award which compensates for injury regardless of whether there is an actual wage loss. 2 A. Larson, The Law of Workmen's Compensa-

---

ly wage, weekly compensation shall be 66⅔ percent of said employee's average weekly wage or 40 percent of the state's average weekly wage, whichever is greater, but, in no event, shall weekly compensation exceed 150 percent of the state's average weekly wage rounded off to the nearest dollar as determined by the labor commissioner for the year in which the injury occurred. For purposes of this section, the state's average weekly wage shall be established by the department of employment security for the immediate preceding calendar year to be effective the following July 1.

**5.** RSA 281:26 provides in pertinent part,

I. Except when death results from injury, in addition to other benefits payable under this chapter, an award shall be paid to employees in amounts provided by RSA 281:23, for the number of weeks set forth hereunder, for permanent bodily loss or losses:
[setting forth specific bodily losses at designated numbers of weeks]
. . . .

I-a. If injury results in more than one permanent bodily loss specified in paragraph I, an award shall be made on the basis of a maximum of 350 weeks, with the appropriate number of weeks to be determined in proportion to the maximum in accordance with the percent of the whole person specified for such bodily losses in the most recent edition of "Guides to the Evaluation of Permanent Impairment" published by the American Medical Association.

II. Except when death results from injury, the scheduled awards under this section accrue to the injured employee simply by virtue of the loss or loss of the use of a member of the body, there being conferred upon the employee a right which is separate and independent of the rights provided by RSA 281:23 and 25.

III. Payment of the scheduled award becomes due upon prompt medical disclosure, after maximum medical improvement has been achieved, regarding the loss or loss of use of the member of the body and shall begin, upon notice of the labor commissioner, as soon as possible, but no later than 14 days after the end of the healing period. Payment of the scheduled award shall generally be made through weekly benefits rather than through single payment, except for a single payment approved by the commissioner of labor upon his determination that a single payment fits the unique conditions of the injured worker better than weekly payments.

IV. In event of dispute as to amount of compensation and/or percentage of permanent partial loss or losses the same shall be determined by the labor commissioner on the basis of competent medical evidence and said findings shall be final.

V. The balance of unpaid weekly scheduled award shall, upon the death of the employee, be void.

**6.** We are bound to review the lower court's interpretation of state law *de novo. Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

tion § 58.11 (1976). To this extent it is unrelated to the other benefits available under the statute." *Id.*

By this language, we do not understand the *Ranger* court to have distinguished between awards for disability and those for mere injury. Worker's compensation, as explained by the author of the treatise cited by the *Ranger* court, was set up to compensate injured workers for the impairment of their earning capacity, or disability, resulting from work-related injury. 2 A. Larson, The Law of Workmen's Compensation § 57.14 (1989) ("Larson"). Scheduled permanent impairment awards of the type provided by RSA 281:26, however, do not fall outside the general theory of compensation for disability. As Larson explains, under the "schedule principle," members of the body are listed and a fixed number of weeks of compensation for their loss is prescribed. Although this amount is to be paid regardless of any actual loss of wages, it is "quite clear that the schedule was never intended to be a departure from or an exception to the wage-loss principle." *Larson* § 57.14(c) at 10–53–54. Rather, the schedule of listed permanent impairments was warranted because "the gravity of the impairment supported a conclusive presumption that actual wage loss would sooner or later result...." *Id.* at 10–54. *See Ladner v. Secretary of H.E.W.*, 304 F.Supp. 474, 476 (S.D.Miss.1969) (under federal Longshoremen's and Harbor Workers' Compensation Act, " 'loss of wage earning capacity and its extent are conclusively established when one of the enumerated physical impairments is proven to have arisen out of the employment' " (citation omitted)); *Adams Insulation Co. v. Industrial Commission of Ariz.*, 163 Ariz. 555, 558, 789 P.2d 1056, 1059 (1990) (en banc) (compensation under scheduled permanent impairment provision based not on actual loss of earning capacity but on "presumption that the injuries result in a specified percentage of permanent partial loss of earning capacity"); *Ernest DiSabatino & Sons, Inc. v. Apostolico*, 260 A.2d 710, 713 (Del.Super.1969) (scheduled permanent impairment provision of statute "based upon a presumption that the nature of a

scheduled injury is such that the reduction in the earning *capacity* will continue into the future whether or not an actual wage loss is incurred" (emphasis original)), *aff'd,* 269 A.2d 552 (Del.Super.1970).

The New Hampshire *Ranger* court announced no more than this in declaring that scheduled awards are paid out "regardless of whether there is an *actual* wage loss." 377 A.2d at 134 (emphasis added). Moreover, the specific section of the Larson treatise cited by the court as authority for that proposition underscores the essential commonality between scheduled benefits and wage-loss, or so-called disability, benefits. Reiterating that the individual's actual predisability earnings are immaterial to the amount of the scheduled award, Larson continues:

> This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such. The basic theory remains the same; the only difference is that the effect on earning capacity is a conclusively presumed one, instead of a specifically proved one based on the individual's actual wage-loss experience.

Larson § 58.11 at 10–323–324 (footnotes omitted).

Thus, the New Hampshire Supreme Court, adopting by reference this explanation of the scheduled-loss aspect of worker's compensation law, stated that compensation under RSA 281:26 was for injury whether or not impairment of earning capacity occurred and that "[t]o this extent" the scheduled impairment award "is unrelated to the other benefits available under the statute." 377 A.2d at 134. We think the import of this comparison with the other benefits is clear on its face: "[t]o [the] extent" that the scheduled impairment award compensates regardless of actual wage loss, it is unrelated to the wage-loss disability benefits. Otherwise, the scheduled award is *not* unrelated and in fact is calculated based on a percentage of wages. *See Ranger*, 377 A.2d at 133 (noting section 26 benefits paid in amounts

provided in section 23, which bases compensation "upon a percentage of the employee's average weekly wage"). To the extent that the scheduled impairment award compensates for a conclusively presumed wage loss, it does relate to the other benefits under the state's worker's compensation system. As the New Hampshire Supreme Court stated on an earlier occasion, speaking comprehensively of the state's worker's compensation laws,

> The distinctive feature of the compensation system by contrast with tort liability is that its awards (apart from medical benefits) are made not for physical injury as such, but for disability produced by such injury. 2 Larson's, Workmen's Compensation Law, 2. Compensable disability under the act consists in loss of earning capacity due to injury.

*Desrosiers v. Dionne Bros. Furniture,* 98 N.H. 424, 101 A.2d 775, 777 (1953).

Benefits under New Hampshire's worker's compensation law, therefore, are for compensable disability, whether resulting in actual loss of earning capacity under section 23 or in conclusively presumed loss of earning capacity flowing from permanent impairment of a body part under section 26. The award for scheduled permanent impairment is therefore a disability benefit subject to the 42 U.S.C. § 424a offset provision.

Both the plaintiff and the Secretary would have us decide this case on the basis of whether to apply a uniform federal definition to "disability" under § 424a or one dependent on the variations among the states' worker's compensation systems. Guidance from other circuits is sparse.[7] One court, faced with determining whether a certain settlement of an Iowa worker's compensation claim was within or without the offset provision, concluded that the question was one of federal law. *Munsinger v. Schweiker,* 709 F.2d 1212, 1217 (8th Cir.1983). The Sixth Circuit in *Grant v. Weinberger,* 482 F.2d 1290 (6th Cir. 1973), considering, as do we, whether state benefits paid simply on account of the loss are offsettable under § 424a, appeared to decide the issue under both state and federal law. *Id.* at 1292. Noting that under Michigan law, as in New Hampshire, the specific-loss benefits did not depend on actual incapacity to work, the court stated,

> This fact, however, does not serve to remove these benefits from the Michigan Workmen's Compensation plan or to demonstrate any Congressional intent to exclude them under § 424a.
>
> Since the benefits for specific loss which are the subject of this dispute are provided for the months concerned "under a workmen's compensation law or plan … of … a State" the offset mandated by the statute must be given effect.

*Id.*

We think that the parties have focused the inquiry too narrowly. Rather than decide whose definition of "disability" governs offset questions, we believe, as did the Sixth Circuit in *Grant,* that the question is whether the award at issue is a periodic benefit under a state workmen's compensation law or plan. We hold that it is.[8]

---

7. We note that plaintiff's reliance on a case within our circuit is misplaced. In *MacQuarrie v. Secretary of Health and Human Services,* 639 F.Supp. 1357 (D.Mass.1986), the claimant appealed the inclusion of an $8,000 award to his spouse in the offsettable amount. Although, as plaintiff states, the ALJ had excluded awards for bodily disfigurement and loss of bodily function from offset, the court did not hold, contrary to plaintiff's representation, that these awards were not disability awards and were therefore exempt from offset; the treatment of these awards was never challenged by the Secretary. Nor did the court, contrary to plaintiff's reading of the case, hold that the $8,000 spousal award must also be excluded from the offset amount. In fact, that precise question was left unan-

swered for remand, *id.* at 1361, the court stating, "Only after a more complete development of the facts in this case … can this Court determine the applicability of the offset provisions." *Id.* at 1362.

8. The legislative history indicates that Congress intended to exclude from offset only workers' "medical, legal, or related expenses [incurred] in connection with their workmen's compensation claims, or in connection with the injuries they have suffered…." S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2200–01. This intent finds expression in the social security regulations. *See* 20 C.F.R. § 404.408(d).

Although we think the result we reach flows from the plain meaning of § 424a, we also find persuasive the legislative history indicating Congress intended this result. Senator Edward Kennedy's remarks during the debate on the Social Security Amendments of 1965 focus on the "unfortunate effects" of the operation of the offset provision in a case involving scheduled permanent impairment benefits:

> The offset in the Senate bill applies to workmen's compensation benefits for partial disability. It is general practice in workmen's compensation to pay compensation for many of these kinds of injuries even if earnings continue or even increase. For example, if a worker loses some fingers even though he suffers no wage loss, the worker receives workmen's compensation benefits for the loss of the fingers. The same principle applies to loss of arms, legs, hands, and so forth. The justice of such compensation has seemed obvious to most people—both experts and the average citizen. Yet the offset proposal would reduce the worker's OASDI benefit wholly or partially by the amount of these workmen's compensation payments. In other words, in many cases he would not gain monetarily for this kind of anatomical loss....

111 Cong.Rec. 16151 (1965). The situation at bar was thus contemplated by the offset provision as enacted, notwithstanding Senator Kennedy's criticism.[9]

Finally, plaintiff asks that we order that the offsettable lump sum amount be prorated over his lifetime to account for the fact that the permanent impairment award represents the only benefit he will receive for his injury for the remainder of his life. Plaintiff raises this issue for the first time on appeal. We believe that the issue properly must be heard in the district court in the first instance. There is simply not enough of a factual record concerning the settlement of plaintiff's claim or his life expectancy—or, for that matter, the extent of his injury, *see* n. 1, *ante*—for us to order the relief requested. *See Sciarotta v.*

*Bowen,* 837 F.2d 135, 141 (3d Cir.1988) (where record not sufficiently complete, remand for determination of whether SSA's proration method is irrational in view of claimant's argument for proration over lifetime). Plaintiff may move in the district court for the proration method he seeks. We do not, of course, intimate any opinion on the merits of plaintiff's position.

The judgment below is *Reversed.*

---

**9.** In light of our holding we do not reach the Secretary's claim that he should be permitted to examine the plaintiff's award for evidence to substantiate the amount allocated as payment for permanent loss.