# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2014

_____

Donna Olson, for the estate of    *
Gordon E. Olson, deceased,    *
    *
    Plaintiff - Appellee,    *
    *    Appeal from the United States
    v.    *    District Court for the
    *    District of North Dakota.
Kenneth S. Apfel, Commissioner of    *
Social Security,    *
    *
    Defendant - Appellant.    *

_____

Submitted: November 17, 1998

Filed: March 11, 1999

_____

Before LOKEN, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
Judges.

_____

LOKEN, Circuit Judge.

Gordon Olson injured his back working as a school custodian. He received
North Dakota worker's compensation benefits, including a lump-sum permanent
partial impairment award for loss of bodily function under N.D. Cent. Code §§ 65-05-
12 to -14 (Supp. 1998). The Commissioner of Social Security determined that Olson

was eligible for social security disability benefits but reduced those benefits under the federal statute that offsets social security and worker's compensation disability benefits. See 42 U.S.C. § 424a. Olson's widow sued, challenging the Commissioner's decision to include Olson's permanent partial impairment award in the worker's compensation benefits subject to offset. Relying on Frost v. Chater, 952 F. Supp. 659 (D.N.D. 1996), the district court granted summary judgment for Mrs. Olson, concluding that North Dakota worker's compensation impairment awards are not subject to the § 424a offset because they are payments for loss of bodily function, not loss of earning capacity. The Commissioner appeals. Reviewing this issue of law de novo, we reverse.

The offset statute reflects Congress's concern that recovery of overlapping worker's compensation and social security disability benefits decreases an injured worker's incentive to seek rehabilitation and further employment. See Richardson v. Belcher, 404 U.S. 78, 82-83 (1971). The statute reduces federal benefits if an injured worker's combined social security and worker's compensation benefits exceed eighty percent of the worker's pre-disability earnings. Worker's compensation benefits subject to this offset are "periodic benefits [paid] on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law." 42 U.S.C. § 424a(a)(2)(A). "Periodic benefits" include lump-sum awards received as a substitute for periodic payments. 42 U.S.C. § 424a(b). Thus, whether Olson's lump-sum North Dakota impairment award is subject to offset turns on two questions: (1) whether the award was paid "on account of [Olson's] total or partial disability," and (2) whether it was a substitute for periodic benefits.[1]

---

[1]The offset statute eliminates the risk of "double offset" by granting an exception to the federal offset if applicable state law contains an offset provision. See § 424a(d). The parties agree the exception does not apply in this case.

# I. Total or Partial Disability.

On appeal, Mrs. Olson concedes that her husband's permanent partial impairment award was made "under [the North Dakota] workmen's compensation law" for purposes of § 424a(a)(2)(A). But she argues it was not paid "on account of [his] total or partial disability" because North Dakota distinguishes disability benefits, which are paid on account of reduced earning capacity, from impairment awards, which are paid on account of loss of bodily function. See Kroeplin v. North Dakota Workmen's Comp. Bureau, 415 N.W.2d 807, 809 (N.D. 1987); Buechler v. North Dakota Workmen's Comp. Bureau, 222 N.W.2d 858, 861-62 (N.D. 1974). The Commissioner on the other hand argues that North Dakota law is not controlling; as a matter of federal law, the term "disability" in § 424a(a)(2)(A) should be broadly construed to include worker's compensation impairment awards, whether or not those awards are measured by or otherwise related to the claimant's wage loss under state law.

At the outset, we agree with the Commissioner that this is an issue of statutory construction governed by federal law. See Munsinger v. Schweiker, 709 F.2d 1212, 1217 (8th Cir. 1983). But that does not tell us what Congress meant by the phrase "on account of . . . total or partial disability." In analyzing that statutory language, we begin by looking at the language of its predecessor. In 1956, when the social security laws were first amended to establish the disability insurance program, the statute provided for the total offset of state worker's compensation payments. That initial offset provision reduced an individual's social security disability benefits -

> (B) [if] it is determined that a periodic benefit is payable . . . under a workmen's compensation law . . . *on account of a physical or mental impairment of such individual.*

42 U.S.C. § 424(a)(2)(B) (1956), 70 Stat. 816 (emphasis added). Under the plain language of that provision, Olson's permanent partial *impairment* award would clearly be subject to offset. But that provision was repealed in 1958, and the current § 424a was not enacted until 1965, when renewed criticism of overlapping benefits persuaded Congress to enact the current offset. See Richardson, 404 U.S. at 82.

We find nothing in the legislative history of § 424a explaining why Congress used the term "disability" in § 424a(a)(2)(A), instead of the word "impairment" that was used in the prior offset statute.[2] There is an extensive definition of "disability" in the disability insurance statutes that include § 424a. See 42 U.S.C. §§ 416(i), 423(d). Though ignored by the parties, the definition contained in these sections requires a close look, because it is reasonable to assume that Congress used the term "disability" in § 424a consistent with its definition of that term in § 423(d), which appears just one provision earlier in the chapter, particularly when that definition was repeated in § 416(i), a section that seems to expressly say it applies to § 424a. However, this ready answer to the inquiry proves unsatisfactory on close inspection. Though nominally a definitional provision, § 423(d) is in reality the provision that delineates eligibility for social security disability benefits. See 42 U.S.C. § 423(a)(1)(D). Therefore, its definition of "disability," which is repeated in § 416(i), is necessarily narrow, to wit:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[2]Nor do we find any clues in the few cases construing the prior offset statute. See Knapczyk v. Ribicoff, 201 F. Supp. 283 (N.D. Ill. 1962); Walters v. Flemming, 185 F. Supp. 288 (D. Mass. 1960).

42 U.S.C. § 423(d)(1)(A). The offset provision in § 424a cannot be limited to worker's compensation benefits paid "on account of . . . disability" in this narrow sense, because § 424a(a)(2)(A) expressly refers to "total or partial disability (whether or not permanent)," thereby expressly including some disabling conditions, such as partial disabilities, that do not entitle a claimant to social security disability benefits under § 423. Thus, Congress must have intended the term "disability" in § 424a(a)(2)(A) to incorporate a broader, worker's compensation-related meaning of that term.[3]

Therefore, we turn to the broader worker's compensation environment to discern the meaning of "total or partial disability" in § 424a. Worker's compensation statutes create a no-fault regime under which employers pay statutorily defined benefits for work-related injuries to their employees. A worker's compensation regime typically pays both the costs related to treating a workplace injury, such as medical and rehabilitative expenses, and periodic benefits to compensate the injured employee for wage loss and reduced earning capacity. Though many regimes now include scheduled impairment awards for specific injuries, most such awards do not depart from the theoretical wage-loss underpinning of worker's compensation. Rather, they reflect statutory presumptions that the scheduled injuries adversely affect earning capacity. See Davidson v. Sullivan, 942 F.2d 90, 94-95 (1st Cir. 1991). For example, the federal statutes providing worker's compensation benefits to federal employees expressly tie both scheduled and unscheduled disability benefits to the

---

[3]Although it is rather easy to demonstrate why the definition of "disability" in § 416(i) and § 423(d) does not fit the use of that word in § 424a, it is hard to explain away the fact that § 416(i) begins, "Except for purposes of sections 402(d), 402(e), 402(f), 423, and 425 of this title, the term 'disability' means . . . ." The apparent answer is that the original offset provision, enacted at the same time as § 416(i), did not use the word "disability," and Congress forgot when it later added § 424a to the statute to include § 424a in the list of provisions excepted from the reach of § 416(i). What seems clear is that it would nullify the offset in many situations to adopt the § 416(i) definition in applying § 424a(a)(2)(A), and we decline to do so.

injured employee's prior monthly pay.  See 5 U.S.C. §§ 8105(a), 8106(a), 8107(a).

Of course, nothing prevents a State from providing worker's compensation benefits that are unrelated to wage loss.  See New York Cent. R.R. v. Bianc, 250 U.S. 596, 602-03 (1919).  North Dakota is in fact an exception to the general rule that scheduled impairment awards compensate for presumed loss of earning capacity. Under the North Dakota statutes as construed by the North Dakota Supreme Court, permanent impairment awards do not compensate for wage loss, but rather for the adverse "personal and social" effects of a workplace injury.  Kroeplin, 415 N.W.2d at 809.[4]  That concept provides the basis for Olson's contention on appeal -- because "disability" benefits are traditionally based upon wage loss and the § 424a offset only applies to periodic benefits on account of "disability," North Dakota permanent impairment awards are not subject to the offset.  This also brings the Commissioner's contrary contention into clearer focus -- "disability" in § 424a(a)(2)(A) simply means a condition resulting from a workplace injury that entitles the claimant to periodic worker's compensation benefits, like the word "impairment" in the original offset

---

[4]The Commissioner argues North Dakota permanent impairment awards in fact compensate for presumed wage loss.  Like the district court, we disagree.  North Dakota impairment awards are identical for every worker with the same impairment, regardless of pre-disability income.  Permanent impairment awards are payable even if the worker suffers no lost wages because he or she continues to work or receives disability payments that compensate for reduced earning capacity.  See Buechler, 222 N.W.2d at 862.  North Dakota's "reverse offset" applies to worker's compensation disability payments but not impairment awards.  See N.D. Cent. Code § 65-05-09.1. These features distinguish North Dakota permanent impairment awards from the impairment benefits held to be wage loss payments subject to the § 424a offset in Krysztoforski v. Chater, 55 F.3d 857, 859-60 (3d Cir. 1995) (Pennsylvania law); Hodge v. Shalala, 27 F.3d 430, 433 (9th Cir. 1994) (Oregon law); and Davidson, 942 F.2d at 95 (New Hampshire law).  See also 4 LARSON, WORKMEN'S COMPENSATION LAW §§ 57.14(d) & (f) (1989), which cites North Dakota impairment awards as an exception to the general rule.

provision; thus, all periodic worker's compensation benefits are subject to the offset if they are paid on account of a workplace injury.

After considering the statutory language from as many perspectives as our foresight permits, we conclude that the phrase "his or her total or partial disability (whether or not permanent)" in § 424a(a)(2) is ambiguous in this regard, and that the conflicting interpretations put forth by the Commissioner and by Olson are each plausible and permissible. Thus, the Commissioner's interpretation must prevail. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984); Crane v. Sullivan, 993 F.2d 1335, 1336 (8th Cir. 1993); cf. Bowen v. Yuckert, 482 U.S. 137, 145-46 (1987). The Commissioner's interpretation is consistent with the still prevalent understanding -- which apparently was universal in 1965 -- that all periodic worker's compensation benefits are for disabling conditions caused by workplace injuries. The Commissioner's interpretation is simpler to administer than an interpretation that requires analysis of the compensation theory underlying particular state law benefits in order to apply the § 424a offset. In addition, the Commissioner's interpretation eliminates any incentive for States to evade the social security offset by characterizing their periodic benefits as something other than wage-loss disability benefits. Finally, it is relevant (though hardly persuasive) that Senator Edward Kennedy in the debates preceding passage of § 424a objected that the offset would even apply to scheduled permanent impairment benefits that are not tied to wage loss. See 111 Cong. Rec. 16151 (1965), quoted in Davidson, 942 F.2d at 96. Therefore, the Commissioner's interpretation must be upheld. Permanent impairment awards, no matter how characterized under state law, are "on account of . . . total or partial disability." Accord Black v. Schweiker, 670 F.2d 108 (9th Cir. 1982); Grant v. Weinberger, 482 F.2d 1290 (6th Cir. 1973).

## II.  A Substitute for Periodic Benefits.

Having decided that North Dakota's permanent impairment awards are payments on account of disability for purposes of § 424a(a)(2)(A), we must address an issue the district court did not reach, whether Olson's lump sum award was "a substitute for" periodic benefits for purposes of § 424a(b). This, too, is a question of federal law. See Munsinger, 709 F.2d at 1217. Congress has not expressly defined the term, "a substitute for" periodic benefits. The Commissioner interprets the term to mean lump sum payments that are *not* intended to reimburse specific expenses related to a workplace injury or a worker's compensation claim, such as medical, legal, rehabilitative, and retraining expenses. Under this interpretation, periodic benefits include unrestricted lump sum payments that are available to replace the injured worker's wages.

We conclude this is a reasonable construction of the statutory language, consistent with the purpose of the worker's compensation offset and explicitly supported by the legislative history of § 424a(b).[5] Therefore, we must defer to the Commissioner's interpretation under Chevron. Olson argues that Chevron deference is inappropriate because the Commissioner's interpretation is not embodied in a rule or regulation. However, we expressly rejected this contention in Emerson v. Steffen, 959 F.2d 119, 122 (8th Cir. 1992). See generally Midtec Paper Corp. v. United States, 857 F.2d 1487, 1496-97 (D.C. Cir. 1988). Accordingly, the Commissioner's decision that Olson's permanent partial impairment award was a substitute for periodic

[5]"Since in some workmen's compensation cases, workers incur medical, legal, or related expenses in connection with their workmen's compensation claims, or in connection with the injuries they have suffered, and since the workmen's compensation awards are generally understood to include compensation for these expenses . . . for purposes of [§ 424a(b)] the [Commissioner] would not, in computing the amount of the periodic benefit payable to an individual under a workmen's compensation program, include any part of the workmen's compensation lump sum or benefit which he finds is equal to the amount of such expenses paid or incurred by the worker." S. Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965 U.S.C.C.A.N. 1943, 2200-2201.

benefits within the meaning of § 424a(b) must be affirmed.  <u>Accord</u> <u>Munsinger</u>, 709 F.2d at 1216-17.

The judgment of the district court is reversed and the case is remanded to the district court with instructions to enter judgment in favor of the Commissioner.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.