# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1794

_____

| | |
|---|---|
| Joann M. Berger, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Kenneth S. Apfel, Commissioner, | * |
| of Social Security, | * |
| | * |
| Appellee. | * |

_____

Submitted:  October 20, 1999

Filed:  February 2, 2000

_____

Before McMILLIAN, HEANEY and MURPHY, Circuit Judges.

_____

HEANEY, Circuit Judge.


Joann Berger appeals the judgment of the district court upholding the final decision of the Commissioner of Social Security reducing Berger's disability insurance benefits to offset a lump-sum settlement of her workers' compensation benefits.  We reverse and remand for further proceedings.

# I. BACKGROUND

Federal law limits the amount of Social Security disability insurance benefits that a person may receive when he or she is also receiving state workers' compensation benefits. If the sum of a person's Social Security and workers' compensation disability benefits would exceed 80% of that person's pre-disability earnings, 42 U.S.C. § 424a(a) (1999) calls for a reduction, or offset, of Social Security benefits such that the total does not exceed the 80% ceiling. If such a person receives workers' compensation benefits in the form of a lump-sum award, as opposed to periodic payments, the Commissioner must "approximate as nearly as possible" the offset that would have applied had the award been paid periodically. See § 424a(b).

Minnesota law provides for an opposing, or "reverse" offset. Under Minn. Stat. Ann. § 176.101(4) (West Supp. 2000), after a worker who has suffered a permanent total disability has received a total of $25,000 in weekly workers' compensation benefits, the employer may deduct from subsequent payments "the amount of any disability benefits being paid by any government disability benefit program," provided those benefits are paid on account of the same injury that occasioned workers' compensation benefits. When an employer is entitled to take the Minnesota reverse offset, the federal offset does not apply. See 42 U.S.C. § 424a(d).

Berger was injured at work in April 1990, and began to collect workers' compensation benefits. In April 1991, Berger applied for Social Security disability benefits and supplemental security income. Her application for benefits was granted in May 1992. Berger later reached a settlement of her workers' compensation claim. Berger's attorney was concerned that a lump-sum settlement would result in a reduction to Berger's Social Security benefits. In a letter to counsel for State Fund Mutual, her employer's insurer, Berger's attorney asked that the settlement agreement include "language which will minimize any impact [the settlement] may have on Mrs. Berger's

social security benefits." (App. at 3.) Counsel for State Fund Mutual, who was charged with drafting the settlement document, responded that he would "simply include some language that indicates the amount of the workers' compensation settlement contemplates an offset because [Berger] is receiving social security benefits simultaneously with her workers' compensation benefits." (Id. at 4.) Presumably, this was a reference to Minnesota's reverse offset.

The terms of the settlement were set forth in an August 1993 stipulation. Although the parties continued to disagree as to whether Berger was totally and permanently disabled, Berger received a lump-sum payment of $30,000, of which $6,200 represented attorney's fees. The stipulation included the following provision:

> It is stipulated that the lump sum payment of $30,000 contemplates a reduction of workers' compensation permanent total disability payments as the result of the employer and insurer's right to take an offset for the social security benefits the employee is receiving and will continue to receive. Nothing in this agreement shall be construed as a waiver by the employee to claim full entitlement to social security benefits.

(R. at 76.) The agreement also noted that Berger's employer contended her average weekly wage at the time of the injury was $187.17.

At the time the stipulation was signed, Berger was receiving a weekly workers' compensation benefit of approximately $118. For the 32-week period between January 4, 1993 and August 15, 1993, Berger's weekly workers' compensation benefit averaged $115.

In August 1994, the Social Security Administration (SSA) informed Berger that her Social Security disability benefits would be subject to a § 424a offset as a result of her workers' compensation settlement. SSA indicated that for purposes of computing the offset required by § 424a(b), Berger's $30,000 settlement, minus $6,856.25 in legal

expenses, would be prorated as a weekly payment of $187.17. Berger sought reconsideration in February 1995, but SSA's initial determination was affirmed in May 1995. Later that month, Berger requested a hearing before an administrative law judge (ALJ), contending her Social Security benefits should not have been subject to offset.

In October 1995, Berger forwarded to the ALJ a copy of an amended settlement agreement dated September 1995. In the stipulation, the parties indicated they intended "to clarify the terms of [the original] Stipulation for Settlement as it was the employee's intention that the Stipulation for Settlement be drafted so as to maximize her social security disability benefits." (R. at 110.) The amended agreement went on to provide that the settlement "[took] into consideration" Berger's remaining life expectancy of 36.2 years, and should be prorated over that span. (R. at 111.) Subtracting from the $30,000 lump-sum payment the $7,500 for rehabilitation benefits and $1,968.75 representing "impairment compensation," Berger calculated that the settlement, prorated over her remaining life expectancy, represented a weekly benefit of $12.99. (Id.) The parties also recounted that prior to the settlement Berger had received $2508.08 in temporary total disability benefits, and $14,694.31 in temporary partial disability benefits, or a total of $17.202.39. This amount, minus $6,754.89 in attorney's fees and divided over 139.4 weeks, represented a pre-settlement weekly benefit of $74.95.

In an October 1996 decision, the ALJ affirmed SSA's determination that Berger was subject to an offset, rejecting Berger's contention that the settlement should be prorated over her remaining life expectancy. According to the ALJ, the amended agreement was "an after-the-fact maneuver . . . to attempt to circumvent the imposition of a valid Worker's Compensation offset." (R. at 21.) If the parties had intended to base the lump-sum award on a formula related to Berger's life expectancy, the ALJ opined, they should have said so in the original settlement agreement.

The ALJ concluded that SSA had correctly used $187.17 as the rate at which to prorate Berger's lump-sum settlement. The ALJ noted that under a provision in SSA's Programs Operations Manual System (POMS), SSA applies a three-step test to determine the rate at which to prorate such a settlement: first, SSA looks to the rate specified in an award; second, to the periodic rate paid prior to the settlement; and third, to the maximum benefit to which the claimant would have been entitled under the state's workers' compensation law. See Social Security Administration POMS DI 52001.555(C)(4). The ALJ determined that SSA's use of $187.17 was consistent with this approach, because the settlement agreement failed to specify an amount by which to prorate the award, and the figure "was mentioned in the settlement agreement and was also once a rate paid to [Berger] for weekly benefits." The ALJ concluded,

> In the absence of a specified rate in the original Stipulation for Settlement, [SSA] is not required to speculate as to what rate was applied and is not required to assume that the lump sum award was intended to compensate the claimant based on his life expectancy . . . [I]f that was [the parties'] intention, then their intention should have been incorporated into the original Stipulation.

(R. at 23.)

Berger subsequently brought this action in the district court pursuant to 42 U.S.C. § 405(g). On cross-motions for summary judgment, the magistrate recommended granting summary judgment in favor of the Commissioner. The magistrate noted that the agency's initial determination was consistent with SSA's three-step procedure, and concluded that the amended agreement did not merely clarify the initial stipulation, but was a belated attempt to escape the offset that it triggered. The district court rejected Berger's objections and adopted the magistrate's report and recommendation.

On appeal, Berger asserts that the original stipulation indicates that the amount of the settlement had been reduced pursuant to Minnesota's "reverse offset" provision, Minn. Stat. § 176.101(4), which permits employers to deduct from periodic workers' compensation payments the amount of Social Security disability benefits the employee received. Berger contends that this provision in the original stipulation shows the amended stipulation was not an after-the-fact maneuver, but merely a clarification of the original stipulation. The Commissioner maintains that contemplation of the reverse offset in the original stipulation was insufficient to protect Berger from the application of the federal offset.

## II. DISCUSSION

In reviewing the Commissioner's decision, we examine whether it is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards. See 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation omitted).

We are inclined to agree that SSA was not compelled to prorate the settlement award over Berger's remaining life expectancy. Although we believe it is clear from the original stipulation that the parties and their attorneys intended to structure the settlement such that Berger's Social Security benefits would not be adversely affected, it is implicit in the agency's three-step approach to proration of lump-sum settlements that bare intent to evade the offset is insufficient, and we are unable to conclude the agency's three-step approach is an unreasonable approach to fulfilling its statutory mandate, see Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 94-95 (1995); Chevron, U.S.A., Inc. v. National Resource Defense Council, 467 U.S. 837, 844 (1984). Further, we do not agree that SSA was bound to accept the proration terms specified

in the amended stipulation. SSA has delineated fairly clearly how it goes about prorating a lump-sum workers' compensation award, see Social Security Ruling 87-21c, and it was therefore incumbent upon Berger's attorney to ensure that the settlement detailed not only the parties' intent, but also how that intent was to be carried out.

However, in light of § 424a's mandate that an offset of a lump-sum award "approximate as nearly as possible" the offset that would apply for a periodic workers' compensation benefit, we believe a remand is required. This is because SSA's use of $187.17 as a figure by which to prorate the settlement is inconsistent with the three-step approach to prorating a lump-sum settlement set forth in POMS DI 52001.555(C)(4). According to that policy, SSA first looks for a rate specified in the settlement. If, as here, the settlement does not specify the rate at which to prorate the award, the second step is to prorate the settlement at "[t]he periodic rate paid prior to the [settlement]." POMS DI 52001.555(C)(4)(b).

Although we recognize that the POMS guidelines "ha[ve] no legal force, and do[] not bind the [Commissioner]," Schweiker v. Hansen, 450 U.S. 785, 789 (1981), we believe the agency's use of $187.17 confuses the first and second steps, and therefore fails to approximate a periodic-benefit offset. That the first stipulation "mentioned" $187.17 as Berger's weekly wage prior to her injury does not justify the use of that figure as the periodic workers' compensation rate paid prior to the settlement. According to the agency's policy, the language of the settlement is relevant only at the first step, not the second. It is true that Berger received a weekly benefit of $187.17 between May 28, 1990 and December 30, 1990. However, at the time she settled her workers' compensation claim, Berger was receiving a weekly workers' compensation benefit of approximately $118. For the 32-week period between January 4, 1993 and August 15, 1993, Berger's weekly workers' compensation benefit averaged $115. Perhaps most telling, the record reflects that Berger had been subject to an offset of her Social Security benefits prior to the lump-sum settlement, when she

was receiving periodic workers' compensation benefits.  Specifically, in December 1993, SSA notified Berger that it had calculated an offset based on a weekly workers' compensation benefit of $103.  These figures are far more indicative of "the periodic rate paid prior to the [settlement]," and would carry out more faithfully the agency's mandate to approximate a periodic-benefit offset "as nearly as practicable."  We therefore remand to the Commissioner to recalculate the § 424a offset based on a more accurate assessment of the periodic workers' compensation benefits Berger was receiving prior to the settlement.

Accordingly, the judgment of the district court is reversed and the cause remanded with instructions to remand to the Commissioner for recalculation of benefits.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.