# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3164

———————

Dennis G. Sunde,                     *
                                     *
          Plaintiff-Appellant,       *
                                     *    Appeal from the United States
     v.                              *    District Court for the
                                     *    District of Minnesota.
Jo Anne B. Barnhart, Commissioner    *
of Social Security,                  *
                                     *
          Defendant-Appellee.        *

———————

Submitted: May 13, 2005
    Filed:  August 15, 2005

———————

Before MORRIS SHEPPARD ARNOLD, LAY, and MURPHY, Circuit Judges.

———————

LAY, Circuit Judge.

This appeal arises out of the Social Security Commissioner's (Commissioner) decision to deny an exclusion of attorney's fees from the federal offset in Disability Insurance Benefits (DIB) required under the Social Security Act (Act). *See* 42 U.S.C. § 424a(a); 20 C.F.R. § 404.408. The issue in this case is whether attorney's fees may be allocated to a time period different from that during which the fees were actually paid. We conclude they cannot.

The Act limits the amount of DIB an individual may receive when simultaneously receiving Workers' Compensation (WC) benefits. *See* 42 U.S.C.

§ 424a(a); 20 C.F.R. § 404.408(a).  When an individual's combined DIB and WC benefits exceed eighty percent of the individual's pre-disability earnings, the Act requires a reduction in DIB – called a DIB "offset."  *See* 42 U.S.C. § 424a(a); *Berger v. Apfel*, 200 F.3d 1157, 1159 (8th Cir. 2000).

Certain expenses are "excluded," or essentially deducted, from the offset computation:

> Amounts paid or incurred, or to be incurred, by the individual for . . . legal . . . expenses in connection with the claim for public disability payments (see § 404.408(a) and (b)) or the injury or occupational disease on which the public disability award or settlement agreement is based, *are excluded in computing the reduction under paragraph (a) of this section* [i.e., 42 U.S.C. § 424a(a)] to the extent they are consonant with the applicable Federal, State, or local law or plan and reflect either the actual amount of expenses already incurred or a reasonable estimate, given the circumstances in the individual's case, of future expenses. Any expenses not established by evidence required by the Administration . . . will not be excluded. . . .

20 C.F.R. § 404.408(d) (emphasis added).

The federal offset does not apply where state law allows an employer to take a "reverse offset."  *See* 42 U.S.C. § 424a(d).  Minnesota is one such state.  *See* Minn. Stat. Ann. § 176.101 sub. 4 (West 1993 & Supp.).  After a Minnesota worker receives $25,000 in weekly permanent total disability WC benefits, the Social Security Administration (SSA) pays the full DIB amount while the employer reduces its WC payments to the injured employee, paying only enough to meet the eighty percent ceiling.  In this way, the federal "offset" is "reversed."

The Appellant in this case, Dennis Sunde, is a Minnesota resident who sustained work-related injuries in 1979 and 1992.  He received WC benefits for

temporary disability through the end of 1996. Later, Sunde applied for concurrent Social Security DIB. An Administrative Law Judge (ALJ) found that Sunde was permanently disabled and entitled to begin receiving DIB as of July 27, 1995. After the ALJ issued that decision, Sunde filed a WC petition for permanent total disability benefits. He then reached a settlement with his employer in January 2000 regarding WC benefits, which contained three stipulations relevant to this matter.

First, Sunde and his employer stipulated that Sunde had been reclassified as permanently disabled (as opposed to temporarily disabled) as of December 1, 1995. They agreed Sunde was entitled to a lump-sum payment based on the difference between the temporary disability WC benefits he had previously received and the permanent disability WC benefits to which he became entitled as of January 1, 1996.

Second, the parties stipulated that Sunde had received $25,000 in WC permanent disability benefits by November 20, 1996. Thus, the employer was eligible for the Minnesota reverse offset on that day. One ramification of this stipulation was that the period from January 1, 1996 through November 19, 1996 became the only period during which Sunde's DIB could possibly be vulnerable to a *federal* offset due to his concurrent receipt of federal DIB and state WC benefits.

Third, the parties stipulated Sunde had incurred $6,500 in attorney's fees as a result of pursuing his WC claim. They agreed to allocate the fees to the period dated January 1 through November 19, 1996, and to exclude (or deduct) the fees from the federal DIB offset computation during that period. This allocation had the effect of increasing the amount of DIB Sunde could receive from the federal government from January 1 through November 19. The stipulation stated unequivocally that this "settlement [was] intended to maximize the employee's entitlement to Social Security disability benefits."

The parties forwarded their settlement to the SSA. It agreed to apply the reverse offset as of November 20, 1996, and pay Sunde's maximum allowable DIB from that date forward. However, the SSA rejected the stipulation's allocation of attorney's fees to the period dated January 1 through November 19. The SSA claimed Sunde's attorney's fees were not actually paid during that time, and said it would allocate fees only to those months in which the fees were actually paid. The SSA added that if Sunde provided evidence showing he indeed paid attorney's fees during the claimed period, it would adjust his benefits accordingly. Sunde never produced this evidence. Since Sunde could not allocate his attorney's fees to the period he desired, he received less money (in the form of DIB) from January 1 through November 19 than he would have under the terms of the stipulation.

Sunde sought administrative review. An ALJ decided that Sunde was not entitled to a retroactive allocation of attorney's fees because the $6,500 in attorney's fees were not actually paid to Sunde's WC attorney during the period claimed. Thus, the allocation of attorney's fees to that period was illusory. The Appeals Counsel denied Sunde's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

Sunde requested judicial review, arguing that (1) the Commissioner's decision to disregard the terms of the stipulation was not based on substantial evidence, and (2) the Commissioner's finding that the allocation of attorney's fees was "retroactive" was incorrect. Both parties submitted cross-motions for summary judgment. Chief Magistrate Judge Jonathan Lebedoff (MJ) of the U.S. District Court for the District of Minnesota recommended that Sunde's motion for summary judgment be denied and the Commissioner's decision be affirmed. United States District Court Judge Joan N. Ericksen of the U.S. District Court for the District of Minnesota adopted the MJ's recommendation in full and granted the Commissioner's motion for summary judgment. Sunde appeals.

We review de novo the district court's decision ruling that the SSA need not honor the stipulated allocation of attorney's fees. *See Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). We also review the Commissioner's final decision, but do so in a deferential manner, looking only to ensure that it was supported by substantial evidence and free of legal error. *See* 42 U.S.C. § 405(g); *Hensley*, 352 F.3d at 355.

Sunde argues that the plain language of 20 C.F.R. § 404.408(d) allows legal expenses to be incurred either in the past or future and does not require fees to be allocated in a time-specific manner. He claims his reading of § 404.408(d) is supported by the Commissioner's Program Operations Manual System (POMS) sections DI 52001.535(4)(b) and 52001.555(H). We disagree. Neither the text of § 404.408(d) nor the POMS actually address whether Sunde may allocate legal fees already paid to an illusory date.

The Commissioner contends that her decision to reject the allocation of fees under the stipulated agreement was supported by substantial evidence because Sunde never produced proof that he paid attorney's fees during the period claimed. We agree; Sunde's lack of evidentiary proof is fatal to his case. *See* 20 C.F.R. § 404.408(d) (stating "expenses not established by evidence required by the Administration . . . will not be excluded").

The Commissioner further argues that she applied the correct legal standards in rejecting the stipulated allocation of fees; accepting the allocation would have contravened the purpose of the statute governing the federal offset, 42 U.S.C. § 424a, which was created to prevent the duplication of benefits inherent in the overlap between federal and state compensation programs for injured workers. We agree with the Commissioner, and hold that her decision was consistent with the purposes underlying section 42 U.S.C. § 424a. In rejecting Sunde's stipulated allocation of attorney's fees, the Commissioner essentially construed § 404.408(d) to prohibit a WC settlement stipulation from allocating paid legal expenses to a time period

-5-

different from that in which the expenses were actually paid, where evidence indicated the stipulation was designed solely for the purpose of circumventing the federal offset provision. When this situation exists, we agree that the Commissioner need not strictly honor the portion of the stipulation identifying the allocation period.[1]

Several authorities provide an amalgam of support for our decision. First, the SSA has already held that it maintains a policy "of not being bound by the terms of a second, or amended, stipulation that would circumvent the workers' compensation offset provisions of section 224 of the Social Security Act." Social Security Ruling 97-3, 62 Fed. Reg. 51923, 51924 (1997). The SSA evaluates "the terms of both the original stipulations and the amendments to stipulations for settlements . . . in light of the Federal statute and its underlying policy to avoid duplication of benefits." *Id.* at 51925. If the amended terms appear to be a sham created solely to circumvent the federal offset, then the SSA disregards them. *Id.*

Social Security Ruling 97-3 addressed a second (or amended) stipulation, but the policy of refusing to be bound by the terms of a stipulation that provides an end-run around the federal offset seems equally applicable to an original stipulation. We see no basis for binding the SSA to the terms of an original stipulation that essentially increases an individual's maximum allowable DIB by creating an illusory payment period for attorney's fees. If Sunde did not have to pay a WC attorney from January 1 through November 19, then he was entitled to lower federal DIB than the stipulation contemplated for that time period. We cannot allow social security recipients to soften the effects of the federal offset by allocating the payment of attorney's fees to any date they wish.

---

[1]This holding only applies to legal expenses "paid or incurred" and does not apply to expenses yet "to be incurred." 20 C.F.R. § 404.408(d). We express no opinion on how future expenses not yet incurred may be allocated.

A holding that construes § 404.408(d) in a manner that hedges against circumvention of the federal offset is in concert with *Berger, supra*. In *Berger*, the parties to the WC settlement clearly intended to structure the settlement so that the amount of the injured worker's Social Security benefits would not be lowered by the federal offset. *See* 200 F.3d at 1159-60. We held that a "bare intent to evade the offset" was an insufficient basis upon which to bind the SSA to the terms of the settlement. *Id.* at 1161. In Sunde's case, evidence of a bare intent to evade the offset is clear. The stipulation stated unequivocally that the "settlement [was] intended to maximize the employee's entitlement to Social Security disability benefits."

For the above reasons, Sunde's appeal is denied and the district court's decision is **AFFIRMED.**

_____