James ALTOBELLA, Plaintiff,

v.

Otis BOWEN, Secretary of Health and Human Services, Defendant.

No. 86 C 8891.

United States District Court, N.D. Illinois, E.D.

Aug. 6, 1987.

Charles A. Marshall, Jr., Chicago, Ill., for plaintiff.

Jeanne M. Witherspoon, Ass't. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

James Altobella ("Altobella") seeks judicial review of a final decision by Secretary of Health and Human Services Otis Bowen ("Secretary") finding Altobella and his family were overpaid $2,896.53 in disability benefits. Altobella had initially been awarded benefits under Social Security Act ("Act") §§ 216(i) and 223, 42 U.S.C. §§ 416(i) and 423.[1] Later Secretary learned Altobella had settled a workers' compensation claim for a lump sum. Secretary decided Altobella's monthly disability payments should have been reduced by a ratable share of that lump sum.

Altobella requested reconsideration of that determination, urging:

1. In converting Altobella's lump sum workers' compensation benefits into their monthly equivalent, Secretary should have prorated the lump sum over 1,560 weeks (Altobella's expected remaining lifetime) instead of 181.3 weeks.

2. Had Secretary done so, no reduction of the disability benefits would have been required under the Act.

After a May 21, 1986 hearing (the "Hearing"), Administrative Law Judge Lester Rosen ("ALJ Rosen" or simply the "ALJ") upheld the original 181.3 week proration period. Altobella then exhausted his administrative remedies in proper sequence and brought this action against Secretary under Section 405(g).

As invariably occurs in social security actions, which come to this Court on the administrative record and a decision by Secretary, the parties have filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order, Secretary's motion is granted and Altobella's motion is denied.

### Facts

On March 25, 1981 Altobella (then 37 years old) settled a claim under the Illinois Workers' Compensation Act (the "Illinois Act"), Ill.Rev.Stat. ch. 48, ¶¶ 138.1 to 138.-30.[2] Altobella's "Settlement Contract Lump Sum Petition and Order" (the "settlement contract," Altobella Mem. Ex. 1) says:

> [Altobella] accepts $32,000.00 representing not less than a 45% loss of use of a man in full, final and complete settlement of any and all claims....

After attorneys' fees and medical costs had been deducted from that amount, Altobella received a lump sum of $25,381.35 (*id.*).

Later Altobella was awarded disability benefits under the federal Act, made payable as of December 1981 (R. 9). When

---

**1.** Altobella's wife and two children were also awarded "auxiliary" benefits (R. 9). As a matter of convenience (and because the same principles apply to all the benefits paid), the analysis part of this opinion will refer only to Altobella and the calculation of his disability benefits. All further citations to sections of the Act will take the form "Section—," referring to the Title 42 numbering rather than to the Act's internal numbering. Regulations drawn from 20 C.F.R. will be cited "Reg. § —."

**2.** Further citations to the Illinois Act will take the form "Illinois Act § —" (the use of the § symbol rather than ¶ stems from the fact that Illinois statutes continue to use § notations internally, even though the Smith-Hurd compilation of Ill.Rev.Stat. shifted over to using the ¶ symbol a few years ago).

Secretary then learned of Altobella's earlier lump sum settlement of his state claim, Secretary sent a December 29, 1982 Request for Workmen's Compensation Information to Altobella's employer (the "employer") (R. 60). In response to question 9 of that Request, a representative from the employer's workers' compensation insurance carrier wrote that the lump sum represented settlement at $140 per week for 225 weeks (R. 61). Nearly three years later (September 4, 1985) Secretary sent the employer another such request. This time Claims Adjuster Cynthia White (the "Claims Adjuster") wrote that the lump sum represented settlement at $140 per week for 228½ weeks (R. 69–70). On the basis of those facts ALJ Rosen determined that (R. 11–12):

1. all benefits payable between December 1981 and September 1984 would be reduced; and

2. Altobella and his family owed Secretary $2,896.53 for an overpayment of disability benefits.

### Statutory Framework

Section 424a(a) provides for the reduction of monthly disability benefits payable to any individual under age 65 who simultaneously receives monthly benefits under a state workers' compensation law or plan. Monthly disability benefits are reduced to the extent *total* monthly benefits exceed the higher of two figures:

1. 80 percent of the individual's average current earnings and

2. the total of the individual's monthly disability insurance benefit and all other monthly benefits prior to reduction.

For purposes of that calculation, the employee's total monthly benefits include monthly disability benefits under Section 423 plus (Section 424a(a)(4)):

such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans [as a workers' compensation law].

Where workers' compensation benefits are payable on other than a monthly basis (such as a lump sum representing a commutation of periodic payments), Section 424a(b) provides:

[T]he reduction under this section shall be made at such time or times and in such amounts as the Secretary finds will approximate as nearly as practicable the reduction prescribed by subsection (a) of this section.[3]

As always, Secretary's decision must be upheld unless (1) the findings are not supported by substantial evidence or (2) Secretary has applied incorrect legal standards (Section 405(g)). *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938), has defined "substantial evidence" as:

Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

But unlike the garden-variety disability cases presented to the federal courts, this action poses no disputed evidentiary issues at all. Hence the real question for resolution is that of the appropriate legal standard.

### ALJ Rosen's Decision

ALJ Rosen first described how Secretary had prorated Altobella's lump sum workers' compensation payment (R. 10):

In arriving at its determination, [Secretary], relying on workers' compensation records (exhibit 24),[4] prorated [Altobella's] net workers' compensation lump sum payment of $25,381.35 (after deduction for attorney's fees and medical expenses) by dividing it by $140.00, the weekly payment he would have received had he not agreed to a lump sum settlement. According to this computation, the $25,381.35 net settlement paid out on March 25, 1981, was deemed to have been paid out in weekly installments of

---

3. [Footnote by this Court] Because Secretary's regulations (see Reg. §§ 404.408(c) and (g)) merely track the Act's language, no purpose is served by referring to them.

4. [Footnote by this Court] Exhibit 24 is the September 4, 1985 Request for Workers' Compensation Information as later filled out by the Claims Adjuster.

$140.00 over 181.3 weeks, with the period extending from March 26, 1981 through September 1984. (Exhibit 13). The $140.00 figure, multiplied by 13/3 to determine the monthly workers' compensation amount, $606.60 (exhibit 19), was then used in the workers' compensation offset calculation in reducing social security benefits for December 1981 through September 1984.

Altobella challenged that proration. He urged his lump sum settlement represented payment for a permanent lifetime disability and therefore should have been prorated over his expected remaining life of 30 years. That approach would have lowered the workers' compensation benefits attributable to Altobella to just $16.26 a week (or $70.45 a month). In turn those amounts would not have brought Altobella's total monthly benefits over the Act's ceiling, so there would have been no need to reduce his monthly disability benefits.

ALJ Rosen rejected Altobella's argument, finding the lump sum was properly prorated over 181.3 weeks at $140 per week (R. 10):

[Secretary's] formulation, in contrast to the one proposed by the claimant's attorney, comes closest to approximating the periodic payments [sic] would have been made had the claimant not taken a lump sum settlement and also accounts for the total amount of workers' compensation he actually received. It is based, moreover, on the Workers' Compensation Board's calculation, as the $32,000.00 gross settlement figure (before deduction of attorneys fees and medical expenses), as expressed by the Workers' Compensation Board, represents settlement of the claim at $140 per week for 228.5 weeks. (Exhibit 24). The alternative method proposed by the claimant's attorney is less precise in terms of approximating periodic payments that would have been

made. Based on the claimant's life expectancy, essentially an actuarial estimate, the $16.26 weekly periodic payment calculated by him bears little relation to the claimant's $140.00 per week entitlement and, depending on how long the claimant actually lives, may or may not account for the entire lump sum payment. Settlement of a claim, as envisioned in the Illinois workers' compensation statute, may indeed be calculated theoretically or in principle as the sum of probable future payments. However, the specific rate, period of payment and settlement amount in the instant case, as determined by the Workers' Compensation Board and upon which the Administration based its determination, corresponds more closely with the realities of the situation.

### Proration of the Lump Sum

Altobella Mem. 6 asserts the ALJ's decision should be overturned because:

The Secretary incorrectly assumed that the lump sum award was for 181 weeks disability when in actuality it is for [Altobella's] useful work life.[5]

In fact what the ALJ decided—at least implicitly—was that the statute made it *irrelevant* that the lump sum represented payment for a permanent lifetime disability. Instead the issue, as the ALJ perceived it, was what "weekly payment would [Altobella] have received had he not agreed to a lump sum settlement" (R. 10).

As to that issue Altobella does not dispute the ALJ's determination that Altobella, had he not been paid in a lump sum, would have received $140 per week. ALJ Rosen relied on information provided by the Claims Adjuster that the $32,000 gross lump sum setlement represented payment at $140 per week for 228½ weeks (R. 70). Although those two figures do not appear

---

**5.** [Footnote by this Court] Altobella Mem. 6's calculations indicate Altobella now suggests a proration different from the one he sought before the ALJ. Instead of using his remaining expected life of 30 years (1,560 weeks), he seeks proration over his remaining expected *work* life of 23 years (1,196 weeks)—until he reaches age 62. Parenthetically, in *Worley v. Harris,* 666

F.2d 417 (9th Cir.1982) Secretary did prorate a lump sum settlement (received when the employee was age 58) over the years remaining until he attained age 62 (*id.* at 419). However, the opinion cast no light on the applicable Oregon statute or the basis for the proration (very short-term in comparison to Altobella's proposal).

anywhere in the settlement contract, they stem from:

1. the settlement contract's statement that Altobella had suffered "not less than 45% loss of use of a man," entitling him to $32,000; and

2. the Illinois Act's formula for calculating the amount of compensation due an employee who suffers "45% loss of use of a man."

In that latter respect, it may tentatively be assumed as the predicate for the calculation (based on the settlement contract) that had Altobella litigated his workers' compensation claim instead of settling it, he would have been found to have suffered 45% loss of use of a man. Under the Illinois Act that would entitle him to receive:

1. 66⅔% of his average weekly wage of $210 (Illinois Act § 138.8(b)(2.1)) [6]

2. for "that percentage [here 45%] of 500 weeks that the partial disability ... bears to total disability" (Illinois Act § 138.8(d)(2)).[7]

Thus on the 45% permanent disability assumption Altobella would be entitled to receive—as compensation for his *permanent* partial disability—$140 each week for 225 weeks, not a lesser amount for the entire duration of that disability.[8]

But that tentative assumption is oversimplistic—it merely verifies that the $32,000 lump-sum settlement reflects "not less than" a 45% disability. To arrive at the true equivalent disability percentage (which would in turn correspond to the number of weeks at $140 weekly to which the $32,000 settlement equates), it is necessary to look further at how the Illinois Act treats litigated claims. Under Illinois Act § 138.9 either an employee or an employer can petition for compensation to be paid in a lump sum rather than over the specified number of weeks. In that event the Industrial Commission ("Commission") can, if "it appears to the best interests of the parties that such compensation be so paid," order (*id.*):

commutation of the compensation to an equivalent lump sum, which commutation shall be an amount which will equal the total sum of the probable future payments capitalized at their present value....

Thus the negotiated $32,000 lump sum settlement must be viewed as the equivalent of a longer stream of future weekly payments (because the $140 per week is a known quantity under Illinois Act § 138.-8(b)(2.1)). And that means ALJ Rosen's confirmation of the simple long-division method erred somewhat in Altobella's favor, because Secretary reduced Altobella's disability benefits over a shorter period than would have been permissible.

To be sure, Altobella did not litigate his claim. But his settlement contract was necessarily approved by Commission, and such approval constitutes a decision of Commission and is the legal equivalent of

---

**6.** On July 1, 1984 the Illinois Act was amended to provide for compensation at the rate of 60% of the employee's average weekly wage where the employee suffers some loss of a "man as a whole."

**7.** An employee may be compensated for injuries under the "man as a whole" provision if (Illinois Act § 138.8(d)(2)):

1. the employee's injuries do not incapacitate him or her from pursuing the employee's usual line of work but would disable him or her from pursuing other suitable occupations; or

2. the employee's injuries *do* partially incapacitate him or her from pursuing the employee's usual line of employment but do not result in impairment of earning capacity; or

3. the employee's injuries *do* result in an impairment of earning capacity but the employee elects to waive his or her right to recover under Illinois Act § 138.8(d)(1).

Under the latter provision, an employee who suffers permanently-reduced earning capacity as a result of an injury is entitled to receive 66⅔ of the difference between pre-injury and post-injury earnings (actual or potential) "for the duration of his disability."

**8.** Of course Altobella's settlement contract actually says he suffered "not less than" 45% loss of use of a man. Indeed when the $32,000 lump sum is divided by the $140 compensation rate, the result is 228½ weeks, not 225 weeks. And as the next portion of the text reflects, that process of simple long division, rather than a proper discounting to reflect the value of money as the Illinois Act provides, errs somewhat in Altobella's favor. That is hardly something Altobella can find fault with.

an award (*Ahlers v. Sears, Roebuck & Co.*, 73 Ill.2d 259, 265, 22 Ill.Dec. 731, 733–34, 383 N.E.2d 207, 209–10 (1978)).

One further calculation was involved in ALJ Rosen's determination, occasioned by the fact that Altobella's actual in-pocket dollars (after payment of attorneys' fees and medical expenses) came to $25,381.35 rather than $32,000. ALJ Rosen divided that $25,381.35 net lump sum by the weekly rate of compensation to which Altobella was entitled ($140). That calculation provided the ALJ with the duration (181.3 weeks) of the weekly payments equivalent to the lump sum.[9]

Although that curtailment of the time period is not the only way the ALJ could have determined the proration (see *Arneson v. Heckler*, No. 83 C 4880, slip op. at 3–5 (N.D.Ill. Aug. 2, 1984)) [Available on WESTLAW, DCT database], it was certainly a permissible one. After all, the one certainty is that Altobella would have been paid $140 each week—whatever the duration of those payments. That being so, the ALJ cannot be faulted for keeping the compensation rate constant and recalculating the duration of the payments, instead of the other way around.

Of course, as this opinion noted at the outset, Altobella does not challenge ALJ Rosen's finding as to how Altobella would have been paid had he not received a lump sum. Fairly considered, Altobella's challenge is that the ALJ asked and answered the wrong question: Instead of determining, and then basing the proration on, the *method* of payment in lieu of a lump sum, the ALJ should have prorated the lump sum based on the *duration of the disability*.

Not surprisingly, Altobella steers clear of the Act's language when making that argument. For Section 424a(a)(4) (brought into play by the lump-sum-approximation mandate of Section 424a(b)) says Secretary must include as total monthly benefits the periodic workers' compensation benefits:

payable (and actually paid) for such month to such individual. . . .

Altobella does not even hint as to how that language may reasonably be construed so as to exclude from total benefits some portion (in this case, 85 to 90%) of the workers' compensation benefits actually paid to a claimant during a given month. And that is what an ALJ would have to do were he or she to prorate workers' compensation benefits over a duration of the employee's disability when those benefits are actually paid out over some shorter period of time.[10]

All Altobella Mem. 5 says is that proration over the duration of the disability "achieves an equitable result" and "avoids hardship." But such arguments are properly addressed to Congress—not to this Court. For though this Court wholeheartedly agrees Altobella's suggested proration method is more equitable than Secretary's,[11] separation-of-powers principles forbid a judicial rewriting of the Act to accomplish equitable goals. After all, it is the Act that speaks in terms of "periodic

9. Once again the long-division method, rather than the proper discount method, produces a shorter time period than would represent true equivalence. But once again Altobella can scarcely complain of an error in his favor.

10. For example, imagine Altobella had been paid $140 each week for 181.3 weeks (the equivalent of $606 each month for 41.9 months) instead of in a lump sum. Under Altobella's proposed reading of the Act, the ALJ would nonetheless have to find only $91.88 of the actual payment was "payable (and actually paid) for" each of those months. Altobella Mem. 4–5 cites the Appeals Council's decision in *In re Bavone* (Dec. 31, 1984) in support of his proration proposal, perhaps because the settlement contract in that case provided the claimant would receive weekly benefits until he reached the age of 65. But all the Appeals Council said in that unpublished and nonbinding decision was that the terms agreed to in the settlement contract should be used in determining the proration. It did *not* say an award for permanent disability should always be prorated over the claimant's useful working life.

11. Altobella's partial disability is also a *permanent* disability. Thus the method by which workers' compensation for that disability is calculated and then paid out under the Illinois Act—be it in a lump sum or over 228½ weeks—should really be irrelevant: Altobella must make that compensation last over his lifetime. And to the extent the funds provided under the Illinois Act must be expended earlier because they have triggered a larger reduction in federal social security benefits, Altobella cannot stretch those funds to their full intended use.

benefits payable (and actually paid) for such month" and that gives *Secretary* (not the courts) the power to convert lump sums—by practicable approximations—to periodic benefits. There is simply no basis under the terms of the Act for asserting Secretary's proration is contrary to, or the result of an unreasonable construction of, the Act.

### Conclusion

There is no dispute as to any material fact, and Secretary is entitled to a judgment as a matter of law. This action is dismissed.