

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2003

# Sanfilippo v. Comm Social Security

Precedential or Non-Precedential: Precedential

Docket 02-2170

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Sanfilippo v. Comm Social Security" (2003). *2003 Decisions.* Paper 595.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/595

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 10, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2170

THOMAS F. SANFILIPPO,
Appellant

v.

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable Gustave Diamond
(D.C. Civil No. 01-cv-00283)

Submitted Under Third Circuit L.A.R. 34.1(a)
January 17, 2003

Before: ROTH, FUENTES, and ALDISERT, *Circuit Judges*

(Opinion Filed: April 10, 2003)

John F. Hooper, III
4712 Clairton Boulevard
Pittsburgh, PA 15236

*Counsel for Appellant*

Eric P. Kressman
Social Security Administration
OGC/Region III
P.O. Box 41777
Philadelphia, PA 19101

*Counsel for Appellee*

## OPINION OF THE COURT

*FUENTES*, Circuit Judge:

Pursuant to 42 U.S.C. § 405(g), Thomas Sanfilippo ("Sanfilippo") sought judicial review in the United States District Court for the Western District of Pennsylvania of the decision of the Commissioner of Social Security ("Commissioner") reducing his federal disability insurance benefits under Title II of the Social Security Act ("Act") by the net amount of a lump-sum workers' compensation settlement, prorated over a period of 4.3 years. Sanfilippo claims that his benefits should not be offset by his pre-settlement compensation rate. Rather, he claims that the lump-sum settlement should be prorated over his life expectancy. Because we agree that the Commissioner's use of the pre-settlement rate in prorating the settlement over a period of 4.3 years is based on a reasonable interpretation of the Act and is not otherwise arbitrary or capricious, we affirm the Order of the District Court granting summary judgment to the Commissioner.

## I. Facts and Procedural History

On February 18, 1987, Sanfilippo, an arborist, suffered neck and back injuries while working. On April 2, 1993, he filed an application for disability insurance benefits. On May 28, 1996, an Administrative Law Judge ("ALJ") issued a decision awarding Sanfilippo benefits under the Act. In accordance with 42 U.S.C. § 424a(a), the Social Security Administration ("SSA") offset Sanfilippo's disability insurance benefits by $243.94 per week ($195.15 per week after the deduction of attorneys' fees), the amount paid by his employer pursuant to the Pennsylvania Workers' Compensation Act.

On July 7, 1998, the Pennsylvania Bureau of Workers' Compensation approved a compromise and release settlement between Sanfilippo and his employer. Under the terms of the settlement, Sanfilippo received a lump-sum payment of $55,000 and, in return, agreed to waive and

release his entitlement to all future indemnity, medical and other benefits that might be available to him under the Pennsylvania Workers' Compensation Act.

In October 1998, SSA informed Sanfilippo that his disability insurance benefits would continue to be reduced by $195.15 per week - the amount of the lump-sum payment prorated over a period of 4.3 years. Sanfilippo requested reconsideration of this offset determination, and, on May 3, 1999, SSA informed Sanfilippo that the reduction of his disability insurance benefits had been properly calculated.

At Sanfilippo's request, an ALJ held a hearing on December 20, 1999. The ALJ granted Sanfilippo's request for leave to obtain additional information. On June 22, 2000, Sanfilippo submitted an amended order from the Pennsylvania Bureau of Workers' Compensation stating that the lump-sum payment of $55,000 represented payment in lieu of compensation equal to $29.59 per week for a period of 1,487 weeks, which was Sanfilippo's life expectancy. On July 17, 2000, the ALJ issued a decision reversing the reconsideration determination and holding that Sanfilippo's lump-sum payment should be prorated over his life expectancy rather than a 4.3 year period.

On September 8, 2000, the Appeals Council notified Sanfilippo that it was reviewing the ALJ's decision under the error of law provision of 20 C.F.R. § 404.969. On December 7, 2000, the Appeals Council issued a decision reversing the determination of the ALJ. The Appeals Council reinstated SSA's prior determination that Sanfilippo's lump-sum workers' compensation settlement should be prorated at the periodic rate received prior to the settlement. Pursuant to 20 C.F.R. § 404.981, the decision of the Appeals Council became the final decision of the Commissioner.

On February 9, 2001, Sanfilippo filed a complaint in the United States District Court for the Western District of Pennsylvania, in which he challenged the decision of the Appeals Council. On cross motions for summary judgment, the District Court granted the Commissioner's motion for summary judgment. Sanfilippo now seeks appellate review of the District Court's decision.

## II.   Jurisdiction and Standard of Review

This Court has jurisdiction over Sanfilippo's appeal pursuant to 42 U.S.C. § 405(g). Our review of legal issues is plenary. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 431 (3d Cir. 1999). Our role is not to impose upon the SSA our own interpretation of the Social Security legislation. Rather, because Congress has delegated to the Commissioner the responsibility for administering the complex programs, we must defer to her construction as long as it is reasonable and not arbitrary and capricious. *Wheeler v. Heckler*, 787 F.2d 101, 104 (3d Cir. 1986).

## III.   Discussion

The issue before the Court on appeal is whether the Commissioner properly prorated Sanfilippo's lump-sum settlement over a period of 4.3 years, or, as Sanfilippo contends, the lump sum award should have been prorated over his life expectancy. Sanfilippo argues that SSA's Program Operations Manual System ("POMS"), § DI-52001.555(C)(4), is irrational, arbitrary and fails to approximate as nearly as practicable the reduction of disability insurance benefits prescribed by 42 U.S.C. § 424a(a).

Pursuant to 42 U.S.C. § 424a(a), the Commissioner is required to reduce, or offset, the level of a recipient's social security disability payments when the total of that recipient's disability payments and workers' compensation benefits exceeds eighty percent of his pre-disability earnings. When an individual's workers' compensation benefits are paid in a lump-sum, the Act requires the Commissioner to prorate the lump-sum payment and "approximate as nearly as practicable" the rate at which the award would have been paid on a monthly basis. 42 U.S.C. § 424a(b). The Commissioner has developed internal guidelines for calculating the rate by which lump-sum awards may be prorated. These guidelines list three steps, in priority order:

1.   The rate specified in the lump-sum award.

2.   The periodic rate prior to the lump-sum if no rate is specified in the lump-sum award.

3. If workers' compensation, the State's workers' compensation maximum in effect in the year of injury. This figure can be used if no rate is specified in the award or there was no preceding periodic benefit.

POMS § DI-52001.555(C)(4).

In this case, the Commissioner ultimately concluded that the periodic rate paid prior to the lump-sum settlement was the appropriate rate for offsetting the lump-sum amount because the original compromise and release settlement did not specify an offset rate. The Commissioner also found that "effect need not be given" to the amended order of the Pennsylvania Bureau of Workers' Compensation "because it was amended solely to circumvent the offset provisions." (R. at 10). The District Court concluded that the Commissioner's determination was a reasonable interpretation of the Act and we agree.

We owe great deference to the Commissioner's method for determining Sanfilippo's workers' compensation offset as the United States Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)). We find nothing unreasonable about the Commissioner's actions in this case. Because there was no rate specified in the original agreement, the Commissioner relied on step two of the lump-sum proration provisions and considered Sanfilippo's prior periodic benefit rate. Sanfilippo's weekly payment before the lump-sum settlement produced a reasonable estimate of what Sanfilippo's future weekly rate would have been had he not agreed to a lump-sum payment. We decline to conclude that the Commissioner's method, or its application to Sanfilippo, is arbitrary and capricious.

A. *Step 2*

Sanfilippo argues that the offset method contained in step 2 is irrational based on this Court's decision in *Sciarotta v. Bowen*, 837 F.2d 135 (3d Cir. 1988). In

*Sciarotta*, this Court remanded the case to the district court to determine whether the Commissioner's assumption that Sciarotta's lump-sum settlement represented his workers' compensation carrier's determination that he would have received the maximum weekly benefit allowable under New Jersey law was irrational. *Id.* at 140. On remand, the district court concluded that the Commissioner's method of calculating the offset rate was irrational because the Commissioner failed to provide a sufficient explanation regarding the use of the maximum workers' compensation rate. *See Sciarotta v. Bowen*, 735 F. Supp. 148, 151-54 (D.N.J. 1989).

*Sciarotta* provides no support for Sanfilippo's position because, as the District Court in this case correctly emphasized, *Sciarotta* dealt with the rationality of the use of the state workers' compensation maximum as the calculation rate under the third step of the POMS interpretive guidelines, not the second step. *See also Rodlin v. Secretary of Health and Human Services*, 750 F. Supp. 146, 152 (D.N.J. 1990) (finding *Sciarotta* clearly distinguishable because "Step 2 . . . concerns the use of a previous periodic rate to prorate the lump sum award, while Step 3 concerns the use of the maximum periodic rate in effect in the year of injury.") In *Sciarotta*, this Court expressed concern about the method the SSA used in converting Sciarotta's lump sum payment into a stream of theoretical periodic payments, noting at the start of the opinion that the "record is not entirely clear as to how the SSA performed these calculations." *Sciarotta*, 837 F.2d at 137 n.2. The SSA had concluded that the settlement reflected the carrier's determination that Sciarotta would have received the maximum weekly benefit allowable under New Jersey law, a conclusion permissible under step 3 of the guidelines; however, the SSA failed to explain how it reached this determination. *Id.* at 140. We remanded the case to the district court to further develop the record and to allow the SSA to explain how it concluded that Sciarotta's settlement represented the maximum allowable payment under New Jersey law. *Id.* at 141. This Court never mentioned step 1 or 2 of the guidelines in *Sciarotta*.

In this case, Sanfilippo received prior periodic payments, a circumstance specifically addressed by step 2 of the

POMS guidelines. Case law dealing with step 3 has no relevance to the issue before us as the Commissioner never reaches step 3 unless the settlement fails to specify a rate (step 1) *and* the applicant received no prior periodic benefit (step 2). As we explained above, by applying Sanfilippo's weekly payment before the lump-sum settlement, according to step 2 of the guidelines, the Commissioner was able to "approximate as nearly as practicable" the rate at which the award would have been paid on a periodic basis. Federal courts in other circuits have also recognized as reasonable the use of step 2 to determine an offset to federal disability benefits. *See Berger v. Apfel*, 200 F.3d 1157, 1161-62 (8th Cir. 2000) (remanding to Commissioner to recalculate offset based on more accurate assessment of periodic payment appellant was receiving prior to settlement); *Mann v. Heckler*, CIV. No. 85-0163P, 1986 WL 36270, at *2 (D. Me. March 17, 1986), *aff'd without opinion*, 802 F.2d 440 (1st Cir. 1986). In sum, we find nothing irrational about applying a periodic rate received prior to a lump-sum settlement to determine the offset rate that will "approximate as nearly as practicable" the hypothetical future periodic rate of the lump-sum settlement.

B. *Amended Order*

Sanfilippo also argues that the Commissioner was bound by the amended order of the Pennsylvania Workers' Compensation Bureau dated May 23, 2000, which stated that the lump-sum payment "represents a payment in lieu of compensation equal to $29.59 per week, for a period of 1487 weeks." (R. at 408). Because the amended order specifies a rate based on life expectancy, Sanfilippo asserts that SSA should have prorated his lump-sum settlement pursuant to step 1 of the POMS interpretive guidelines. The District Court affirmed the decision of the Commissioner to discount the amended order based on Social Security Ruling 97-3, which states:

> Based on section 224 of the Act, case law, and SSA policy, SSA is not necessarily bound by the terms of a second, or amended, stipulation in determining whether and by what rate a disabled worker's Social Security disability insurance benefits should be offset on account of a WC [workers' compensation] lump sum

payment. SSA will evaluate both the original and amended stipulations and disregard any language which has the effect of altering the terms in the original lump-sum settlement where the terms in the amended document are illusory or in conflict with the terms of the first stipulation concerning the actual intent of the parties, and where, as here, the terms of the amended document have the effect of circumventing the WC offset provisions of section 224 of the Act.

Social Security Ruling 97-3 (published 10/3/97).

We agree with the decision of the District Court. The amended order was issued almost two years after Sanfilippo's original compromise and release agreement and the terms, rights, and obligations of the settlement remained the same. The only change to the original settlement was that the lump-sum amount was said to represent compensation of $29.59 per week over the course of Sanfilippo's life expectancy. The terms in this amended document "would have the effect of circumventing the WC offset provisions of section 224 of the Act," the exact scenario that Social Security Ruling 97-3 was designed to address and avoid. We find no legal error in the Commissioner's decision to not give effect to the amended order.

## IV. Conclusion

Accordingly, for the reasons stated above, we affirm the judgment of the District Court.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*