Daniel AVERY, Plaintiff

v.

Michael J. ASTRUE, Commissioner, Social Security Administration, Defendant.

Civil Action No. 07–30174–KPN.

United States District Court, D. Massachusetts.

March 13, 2009.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

Stephen R. Kaplan, Northampton, MA, for Plaintiff.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS and THE COMMISSIONER'S MOTION TO AFFIRM HIS FINAL DECISION (Document Nos. 9 and 11)*

NEIMAN, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Daniel Avery ("Plaintiff") seeks review of a final decision of the Commissioner of Social Security ("Commissioner") reducing the amount of his monthly Social Security disability ("SSDI") payments to account for his receipt of workers' compensation benefits. Plaintiff asserts that the Commissioner's calculations were in error and that his workers' compensation benefits ought to have been prorated over at least a 120 month period rather than the 25 months utilized by the Commissioner. In response, the Commissioner asserts that the shorter period was in accord with federal law and should be affirmed.

On February 25, 2009, the court heard oral argument on the parties' cross-motions for judgment, at which time they consented to its jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. For the reasons that follow, the court will allow the Commissioner's motion and deny Plaintiff's motion.

### I. APPLICABLE STATUTORY PROVISIONS

Section 223 of the Social Security Act (the "Act"), codified at 42 U.S.C. § 423, provides for the payment of SSDI benefits to those individuals who have not attained retirement age but who have established a disability within the meaning of the Act. However, section 224(a) of the Act, 42 U.S.C. § 424a(a), provides for an offset of workers' compensation benefits against SSDI benefits, *i.e.*, SSDI benefits are to be reduced for any month (prior to the month in which the individual attains the age of 65) in which the individual is entitled to both SSDI and periodic workers' compensation benefits so that the benefit total from the two sources does not exceed eighty percent of his pre-disability earnings.[1] In turn, section 224(b), 42 U.S.C.

---

1. In relevant part, section 224(a) provides as follows:

   If for any month prior to the month in which an individual attains the age of 65—
   (1) such individual is entitled to benefits under section [223] and
   (2) such individual is entitled for such month to—
   (A) periodic benefits on account of his or her total or partial disability (whether or not permanent) under a workmen's compensation law or plan of the United States or a State, or
   (B) periodic benefits on account of his or her total or partial disability (whether or not permanent) under any other law or plan of the United States, a State, a political subdivision (as that term is used in section [218(b)(2)] ), or an instrumentality of two or more States (as that term is used in section [218(g)] ), other than (i) benefits payable under Title 38, (ii) benefits payable under a program of assistance which is based on need, (iii) benefits based on service all or substantially all of which was included under an agreement entered into by a State and the Commissioner of Social Security under section [218], and (iv) benefits under a law or plan of the United States based on service all or substantially all of which is employment as defined in section [210], the total of his benefits under section [223] for such month and of any benefits under section [202] for such month based on his wages and self-employment income shall be reduced (but not below

§ 424a(b), provides that workers' compensation benefits payable on other than a monthly basis—*e.g.*, a lump-sump payment that is intended as a commutation of, or a substitution for, periodic workers' compensation payments—are to be offset against SSDI benefits as well, at rates which "approximate as nearly as practicable" the reduction required by section 224(a).[2] These offset provisions reflect Congressional concern that recovery of overlapping workers' compensation and SSDI benefits could decrease an injured worker's incentive to seek rehabilitation and further employment. *See Richardson v. Belcher,* 404 U.S. 78, 82, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Davidson v. Sullivan,* 942 F.2d 90, 92 (1st Cir.1991).

## II. *Background*

The relevant facts of the case at bar are not in dispute. The parties agree that Plaintiff sustained a work-related injury as a janitor at the University of Massachusetts and received weekly workers' compensation benefits from March 1, 1998, through January 31, 2000. (Administrative Record ("A.R.") at 54, 88–90, 97.) In February of 2000, Plaintiff settled his workers' compensation claim for a lump-sum payment of $11,000; $2,365.50 of the award went towards attorney's fees and expenses and the balance, $8,634.50, was paid to Plaintiff. (A.R. at 95–99.) The lump-sum award did not make mention of a periodic payment rate. (*See id.*)

The parties also agree that Plaintiff applied for SSDI benefits on March 7, 2000. (*See* A.R. at 41.) In a decision dated July 23, 2001, amended on August 31, 2001, Plaintiff was found disabled within the meaning of the Act as of March 20, 1998. (A.R. at 30–36, 41.) The parties agree as well that retroactive benefits due Plaintiff could only be paid starting twelve months

---

zero) by the amount by which the sum of—

(3) such total of benefits under sections [223] and [202] for such month, and

(4) such periodic benefits payable (and actually paid) for such month to such individual under such laws or plans,

exceeds the higher of

(5) 80 per centum of his "average current earnings," or

(6) the total of such individual's disability insurance benefits under section [223] for such month and of any monthly insurance benefits under section [202] for such month based on his wages and self-employment income, prior to reduction under this section.

\* \* \* \*

For purposes of clause (5), an individual's average current earnings means the largest of (A) the average monthly wage (determined under section [215(b)] as in effect prior to January 1979) used for purposes of computing his benefits under section [223], (B) one-sixtieth of the total of his wages and self-employment income (computed without regard to the limitations specified in sections [209(a)(1)] and [211(b)(1)]) for the five consecutive calendar years after 1950 for which such wages and self-employment income were highest, or (C) one-twelfth of the total of his wages and self-employment income (computed without regard to the limitations specified in sections [209(a)(1)] and [211(b)(1)]) for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled ([223(d)]) and the five years preceding that year.

42 U.S.C. § 424a(a).

**2.** Section 224(b) reads in its entirety as follows:

(b) If any periodic benefit for a total or partial disability under a law or plan described in subsection (a)(2) of this section is payable on other than a monthly basis (excluding a benefit payable as a lump sum except to the extent that it is a commutation of, or a substitute for, periodic payments), the reduction shall be made at such time or times and in such amounts as the Commissioner of Social Security finds will approximate as nearly as practicable the reduction prescribed in subsection (a) of this section.

42 U.S.C. § 424a(b).

preceding the date of his application, *i.e.*, from the beginning of March of 1999. *See* 42 U.S.C. § 423(b); 20 C.F.R. § 404.621(a)(1).

In an undated Notice of Award (A.R. at 46–51), but most likely dated on or about September 24, 2001 (*see* A.R. at 70), the Commissioner notified Plaintiff that his retroactive SSDI benefits would be reduced based on both his receipt of weekly workers' compensation benefits from March of 1999 through January of 2000, as well as the $11,000 lump-sum workers' compensation award he received in February of 2000. (A.R. at 46–51.) On reconsideration, however, the Commissioner reduced the lump-sum workers' compensation award which would be taken into account to $8,634.50 ($11,000 less $2,365.50 for attorney's fees and expenses) and prorated that balance toward the retroactive SSDI otherwise due Plaintiff at a weekly rate of $141.76. (A.R. at 53–56.) The weekly rate was such that the offset was applied to Plaintiff's retroactive SSDI benefits on a monthly basis from March of 1999 through March of 2001, a period of 25 months. Beginning in April of 2001, the Notice of Award explained, Plaintiff's SSDI benefits would be paid at the full monthly rate because his workers' compensation benefits would have been taken entirely into account. (A.R. at 47, 54.) Plaintiff soon challenged the offset calculation in a mandamus proceeding in this court, *see Avery v. Barnhart*, Civil Action No. 03–30232–MAP, but that case was dismissed on February 20, 2004, because of Plaintiff's failure to exhaust his administrative remedies.

Thereafter, on January 14, 2005, an administrative law judge ("ALJ") conducted a hearing on the offset issue. (A.R. at 121–29.) In a decision dated May 26, 2005, the ALJ determined that the net lump-sum award of $8,634.50 represented a payment in lieu of further weekly workers' compensation payments and had been properly used to offset Plaintiff's SSDI benefits. (A.R. at 23–25.) The ALJ found that, since the lump-sum settlement did not specify a periodic payment rate, Plaintiff's SSDI was correctly offset at the weekly workers' compensation rate previously received by him.[3] The Appeals Council denied Plaintiff's request for review on July 20, 2008 (A.R. at 305), rendering the ALJ's decision final and subject to judicial review.

### III. STANDARD OF REVIEW

■ Judicial review in Social Security cases is typically limited to determining whether the findings of the Commissioner are supported by substantial evidence. 42 U.S.C. § 405(g). *See also Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Barrientos v. Sec'y of Health & Human Servs.*, 820 F.2d 1, 2 (1st Cir.1987). The court "must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). Accordingly, the court "must affirm the [Commissioner's] final decision, even if the record could justify a different conclusion, so long as it is supported by substantial evidence." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir.1987). Where the question presented to the court is one of law, however, the Commissioner's determination is reviewable to determine whether his conclusions of law comport with controlling legal standards. *See Sles-*

---

**3.** The Commissioner acknowledges that the ALJ's decision mistakenly referred to a weekly workers' compensation rate of $180.59 but points out that the ALJ, accounting for attorney's fees and expenses, actually applied a weekly rate of $141.76. (*See* A.R. at 23, 54.)

*singer v. Sec'y of Health & Human Servs.,*
835 F.2d 937, 939 (1st Cir.1987).

## IV. DISCUSSION

■ The Commissioner argues that the ALJ correctly determined the offset rate under federal law, while Plaintiff argues that the ALJ should have referred to state law and apply an offset prorated over 120 months. After first describing these arguments in greater detail, the court will analyze them and, in the end, conclude that Plaintiff has failed to establish that the ALJ's decision was not based upon substantial evidence or that the ALJ committed an error of law.

## A. THE PARTIES' ARGUMENTS

■ As indicated, the Commissioner maintains that the ALJ correctly determined the offset rate under controlling federal law, including section 224(b) and 20 C.F.R. § 404.408, which sets forth general rules regarding the amount of the monthly reduction in federal benefits. The Commissioner also asserts that the ALJ's decision complied with agency guidelines set out in the Program Operations Manual System ("POMS").[4]

■ The POMS, in applicable part, lists the following three methods to compute the rate of reduction for lump-sum workers' compensation awards:

a. The rate specified in the LS [lump-sum] award . . . .

b. The latest periodic rate paid prior to the LS if no rate is specified in the LS award . . . .

c. If WC [workers' compensation], the State's WC maximum in effect on the date of injury/illness. This figure can be used if no rate is specified in the award and there was no preceding periodic benefit. . . . The state maximum is the periodic rate that, in almost every case, would have been payable had periodic payments been made instead of a LS.

POMS, section DI 52001.555(C)(4), 2001 WL 1936336 (Prorating a Workers' Compensation Public Disability Benefit (WC/PDB) Lump Sum). The POMS lists these three methods in priority order but notes that all methods must be considered.[5]

Here, the Commissioner asserts that the ALJ correctly applied the second POMS method, *i.e.,* the latest periodic rate paid, since the lump-sum award itself did not establish a rate. Accordingly, the Commissioner argues, the ALJ appropriately used the weekly rate of workers' compensation paid to Plaintiff prior to the lump-sum award. This approach, the Commissioner avers, approximated as nearly as practicable a reduction based on the receipt of monthly payments, as required by section 224(b).

---

**4.** While the POMS guidelines do not have the force of law, *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), they have value, effect and persuasive force as the agency's interpretation of the statutory mandate and deserve deference as long as they are reasonable and consistent with the statute, *Barnhart v. Walton,* 535 U.S. 212, 221–22, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). *See Bubnis v. Apfel,* 150 F.3d 177, 181 (2d Cir.1998); *Davis v. Sec'y of Health & Human Servs.,* 867 F.2d 336, 340 (6th Cir. 1989).

**5.** Only the "net amount" of a lump-sum award may be used toward an offset. *See* 20 C.F.R. § 404.408(d) and POMS DI 52001.555. Excludable amounts include documented legal fees as well as past and future medical expenses. These allocations must be reasonable. *See MacQuarrie v. Sec'y of Health & Human Servs.,* 639 F.Supp. 1357, 1363 (D.Mass.1986) (ordering remand on issue of exclusion of $8,100 spousal payment from offset).

For his part, Plaintiff acknowledges that the workers' compensation he received was intended to compensate him for the impairment to his earning capacity arising from his work-related injury. He argues, however, that the ALJ should have referred to state law and applied an offset prorated over 120 months.

It should be noted that, prior to oral argument, Plaintiff had argued that the offset rate should have been prorated over 132 months. According to Plaintiff, he received weekly workers' compensation during at least 12 months for which he was to receive retroactive SSDI benefits, while the lump-sum award represented payments for an additional 120 months (520 weeks) of permanent partial disability under the state statute upon which he relies, Mass. Gen. L. ch. 152, § 35 ("section 35"); hence, the 132 months. Plaintiff changed his position, however, upon realizing that the *maximum* number of weeks during which a claimant could receive periodic workers' compensation under section 35 was 520.[6]

In a chart attached to his opposition to Defendant's motion, Plaintiff compares the Commissioner's calculations (proration over 25 months) with what Plaintiff originally believed to be the more appropriate formula (proration over 132 months). Although Plaintiff's chart is somewhat confusing and the span of months has now changed, it is clear that the issue between the parties boils down to the period of time over which the offset ought to have been applied. Obviously, the longer the proration period, the lower the monthly workers' compensation to be offset against SSDI; the shorter the proration period, the higher the monthly workers' compensation to be offset against SSDI.[7]

### B. *ANALYSIS*

Before addressing the parties' arguments, the court wishes to point out what appears to be a fundamental problem with Plaintiff's calculus. Plaintiff acknowledges that he received weekly workers' compensation from March of 1998 through January of 2000, and that such periodic benefits were paid him for twelve of the months for which SSDI retroactive payments were due him, *i.e.*, March of 1999 through January of 2000. However, rather than acknowledging that such periodic compensation should be offset against his SSDI retroactive benefits in accord with section 224(a), Plaintiff seeks to add the amount he received in those twelve months to the lump-sum payment he later received and divide the total by 120 months pursuant, he says, to the state statute, section 35. Thus, Plaintiff does not simply argue that the offset of the workers' compensation *lump-sum* award ought to be offset against his SSDI based on the 120 months mentioned in the state statute; he seeks to add to the mix the weekly workers' compensation he received over the course of

---

**6.** Section 35 provides in applicable part as follows:

> The total number of weeks of [worker's] compensation due the employee ... shall not exceed two hundred and sixty; provided, however, that this number may be extended to five hundred twenty if an insurer agrees or an administrative judge finds that the employee has, as a result of a personal injury under this chapter, suffered a permanent loss of seventy-five percent or more of any bodily function or sense ..., developed

a permanently life-threatening physical condition, or contracted a permanently disabling occupational disease which is of a physical nature and cause.

Mass. Gen. L. ch. 152, § 35.

**7.** Plaintiff also asserts that the Commissioner, contrary to section 224(a), withheld cost-of-living adjustments between December of 1999 and September of 2001. This assertion is undeveloped and, in any event, does not affect the underlying issue.

the twelve months, despite the fact that those periodic benefits fall well within the provisions of section 224(a). In support, Plaintiff suggested at oral argument that these periodic payments were taken into account when the lump-sum award was determined. Plaintiff, however, has provided no support, factual or legal, for this position. Accordingly, the court has proceeded on the basis that, at best, Plaintiff's argument with respect to the 120 month proration applies only to the lump-sum award he received.

■ Plaintiff's argument with respect to the 120 month proration is creative but, in the end, unpersuasive. For one thing, Plaintiff barely acknowledges that the SSDI offset is governed in the first instance by federal not state law. *See, e.g., Munsinger v. Schweiker,* 709 F.2d 1212, 1217 (8th Cir.1983) (resolution of offset issues is a federal question to be answered by "the federal statute and its underlying policy, notwithstanding conflicting state law") (citing *Sola Elec. Co. v. Jefferson Elec. Co.,* 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165 (1942)). Thus, Plaintiff hardly mentions the federal statute, let alone 20 C.F.R. § 404.408(g) or the POMS. Nevertheless, the Commissioner acknowledges that state law does come into play when determining whether a lump-sum award should be considered a periodic benefit. *See Davidson,* 942 F.2d at 95. *See also Krysztoforski v. Chater,* 55 F.3d 857, 859 (3d Cir.1995) (holding that federal law governs whether a workers' compensation award should be offset, but agreeing that court "should look to state law to inform the nature of the workers' compensation payments"). It is for that reason, perhaps, that Plaintiff proceeded directly to his state law argument.

As it turns out, there are a number of ways in which lump-sum amounts have been prorated by the courts, sometimes grounded in state law, sometimes not. The Third Circuit Court of Appeals, for example, remanded a case "for a determination of a rational and appropriate method of proration," including consideration of the plaintiff's "expected working life," "the period of time over which [the plaintiff] would actually have been entitled to receive benefits," or the "stream of theoretical periodic payments" utilized by the Commissioner. *Sciarotta v. Bowen,* 837 F.2d 135, 140–41 & n. 10 (3d Cir.1988) (emphasis omitted). On remand, the district court held that the method used by the Commissioner, *i.e.,* the third method set forth in the POMS, was irrational, in part because the claimant was permanently and totally disabled, as distinct from partially disabled or, as here, permanently partially disabled. *See Sciarotta v. Bowen,* 735 F.Supp. 148, 154 (D.N.J.1989).

Some courts have simply accepted rates specified in the lump-sum workers' compensation award. *See, e.g., Sellers v. Apfel,* 2001 WL 228181, at **1, 15 (S.D.Ala. Mar. 1, 2001) (remanding matter to apply rates specified in revised lump-sum award). Yet other courts, however, have supported the Commissioner's decision to reject the terms of lump-sum awards, particularly when those terms have been amended by the claimant and the workers' compensation authority. *See, e.g., Sanfilippo v. Barnhart,* 325 F.3d 391, 394–96 (3d Cir.2003) (no legal error in Commissioner's decision to not give effect to an amended lump-sum award); *Berger v. Apfel,* 200 F.3d 1157, 1161 (8th Cir.2000) (Commissioner not bound to accept terms of amended stipulation entered after the administrative law judge determined offset); *Napier v. Astrue,* 2007 WL 4365424, at *3 (E.D.Ky. Dec. 12, 2007) ("Although the Commissioner *could* have given effect to the amended agreement, there is substantial evidence to support his finding

that the amended agreement was illusory and would have the effect of circumventing the offset provisions of Section 424(a) even though there was no 'fraud' as such.") (footnote omitted; emphasis in original). *See also* Social Security Ruling ("SSR") 97–3, 1997 WL 620432, at *3 (Commissioner not bound by revised lump-sum awards) (citing cases). *But see McCollett v. Barnhart*, 2004 WL 2677210 at *2 (D.Me. Nov. 23, 2004) (report and recommendation that SSR 97–3 not be applied retroactively), *aff'd*, 2005 WL 852453 (D.Me. Apr. 13, 2005). Here, it bears repeating that Plaintiff's lump-sum workers' compensation award did not set a periodic payment rate.

All that aside, most courts have accepted the Commissioner's proration of the lump-sum amount by the periodic rate previously received by a claimant when determining the amount of the offset. *See e.g., Bubnis*, 150 F.3d at 185; *Harden v. U.S. Dep't. of Health & Human Servs.*, 979 F.2d 1082, 1084 (5th Cir.1992); *Rodlin v. Sec'y of Health & Human Servs.*, 750 F.Supp. 146, 151 (D.N.J.1990); *Sanfilippo*, 325 F.3d at 391. The Ninth Circuit, however, has determined that the offset amount should equal the claimant's lump-sum award divided by the number of months between the date of the award and the date he was to reach age 65. *Hodge v. Shalala*, 27 F.3d 430, 431 (9th Cir.1994). In doing so, the court rejected both the Commissioner's argument that the monthly offset amount should equal what he had previously received each month in state disability payments as well as the claimant's argument that the lump-sum award should be divided by the number of months remaining in his natural life. *See id.* The Commissioner has acquiesced in this ruling with regard to cases arising in the Ninth Circuit, *see* Social Security Acquiescence Ruling AR 95–2(9), 1995 WL 412112, and Plaintiff urges this court to follow suit.

The district court in *Hodge*, it should be noted, had originally determined that the lump-sum award could not be used as an offset at all. *See id.,* 27 F.3d at 433 n. 5. In so ruling, the court relied on *Lemire v. Sec'y of Health & Human Servs.*, 682 F.Supp. 102 (D.N.H.1988), which held that a New Hampshire lump-sum payment could not be used for an offset. *See Hodge* at n. 5. The reasoning in *Lemire*, however, was subsequently overruled by the First Circuit in *Davidson*, 942 F.2d at 93. *See Hodge* at n. 5. *See also Gibbons v. Barnhart*, 231 F.R.D. 450, 453 (D.Del.2005) (recognizing overruling). In essence, the First Circuit held that lump-sum awards were not exempt from consideration for an offset. *Davidson*, 942 F.2d at 95. Nevertheless, the First Circuit remanded the matter so that the district court could address whether the lump-sum award should be prorated over the plaintiff's lifetime, an argument raised for the first time on appeal. *Id.* at 96. The First Circuit did not express an opinion on the merits of that argument nor has it addressed the issue since.

Picking up on the First Circuit's remand in *Davidson*, Plaintiff's argument for an extended proration offset is grounded in section 35 and *Paltsios' Case*, 329 Mass. 526, 109 N.E.2d 163 (1952), in which the Supreme Judicial Court determined that a total permanent disability lump-sum payment was designed to cover a claimant's lifetime. *Id.* at 165. Putting aside for the moment the fact that Plaintiff is not arguing for a lifetime proration (he is, rather, seeking to apply an additional 520 weeks (120 months) under section 35), *Paltsios' Case* only involved the appropriateness of a lump-sum award by the Industrial Accident Board under Mass. Gen. L. ch. 152, § 48 relative to a *total* permanent disability under Mass. Gen. L. ch. 152, § 34A. It is hardly controlling on the issues raised in

the case at bar, which involve partial incapacity under section 35.

This distinction between total and partial disability is not insignificant. As described, the district court decision on remand in *Sciarotta*, which rejected the Commissioner's application of the POMS, turned on that very distinction. Citing with approval *Altobella v. Bowen*, 668 F.Supp. 1134 (N.D.Ill.1987)—which prorated the lump-sum on the basis of a weekly sum rather than prorating it over either the plaintiff's life expectancy or the course of his disability—the court in *Sciarotta* noted that the *Altobella* plaintiff was "only partially, though permanently, disabled." *Sciarotta*, 735 F.Supp. at 152. The plaintiff before the *Sciarotta* court, in contrast, was totally and permanently disabled. Treating the two differently, the court stated, was appropriate in light of Congress' concern when enacting the offset provisions:

> As noted in the [Commissioner]'s brief, in enacting the offset provisions, Congress was concerned that if workers received benefits in excess of their predisability pay, they would have a reduced incentive to return to work, thus impeding the rehabilitative efforts of the state programs. That principle would clearly apply to someone like Mr. Altobella, a partially disabled worker perhaps subject to rehabilitation and a consequent return to work. It would not, however, apply to someone in the position of Mr. Sciarotta for whom rehabilitation and return to work seem not to be relevant concerns.

*Id.* at 152–53 (citing, *inter alia, Richardson*, 404 U.S. at 83–84, 92 S.Ct. 254). *See also Davidson*, 942 F.2d at 92 ("The offset provision was enacted to prevent the duplication of disability . . . payments in excess of predisability earnings, which was perceived by Congress to have 'reduced the

incentive of the worker to return to the job, and impeded the rehabilitative efforts of the state programs.'") (quoting *Richardson*, 404 U.S. at 82–83, 92 S.Ct. 254). The Ninth Circuit's decision in Hodge, perhaps, to the contrary, the same is true here. There may well be a persuasive argument that supports an extended proration even for partial disability benefits, but Plaintiff has not made that argument, if at all, persuasively.

To be sure, Plaintiff argues more generally that governing state law was built into the lump-sum award. Pursuant to *Paltsios' Case*, Plaintiff maintains, a workers' compensation lump-sum award should equal as nearly as possible the value of all such compensation which an employee would be entitled to receive. Accordingly, Plaintiff asserts, his lump-sum award should be prorated over the course of time for which he would have been eligible for periodic workers' compensation benefits.

Unfortunately for his cause, Plaintiff's argument falls short for a number of reasons. First, there was no evidence before the ALJ that Plaintiff's lump-sum award was calculated with any reference to the maximum number of weeks available under section 35. If anything, pursuant to Mass. Gen. L. ch. 152, § 48, the lump-sum settlement operated to terminate the employer's liability for weekly payments. *See Walters v. Flemming*, 185 F.Supp. 288, 289 (D.Mass.1960) (regardless of how the amount was determined, claimant surrendered his claim to future periodic benefits in return for the lump-sum payment).

Second, Plaintiff's argument to the contrary, section 35 does not "require" that the lump-sum be amortized over 120 months. By its terms, section 35, quoted in note 6 *supra*, provides for a periodic payment of *up to* 260 weeks of benefits for partial incapacity for work. The ceiling increases to 520 weeks only if the employ-

ee has suffered a permanent loss of seventy-five or more percent of any bodily function or sense, or developed a permanently life-threatening physical condition, or contracted a permanently disabled occupational disease which is of a physical nature and cause. Plaintiff provided scant evidence to the ALJ that he suffered the type of injury that would have brought his section 35 benefits to the 520 week maximum. Even now, Plaintiff offers little reason why the *maximum* number of weeks potentially available for periodic workers' compensation should apply.

Granted, as Plaintiff points out, Dr. Mark Linson told the Massachusetts Department of Industrial Accidents that, to a reasonable degree of medical certainty, Plaintiff's work injury of March 20, 1998, was "a major factor in his ongoing back and leg pain and [found] him permanently partially disable, at a medical end result." (A.R. at 90.) But Dr. Linson also opined that Plaintiff was capable of a range of sedentary to light work. (*See id.*) The lump-sum settlement agreement itself indicates that Plaintiff's medical condition was stable and that he retained a work capacity for light exertional work. (A.R. at 96.) Again, as described, Plaintiff's *partial* rather than *total* disability is significant in light of the Congressional purpose of the offset provision.

Third and finally, lump-sum awards, by their very nature, are compromises which take into account a host of considerations unrelated to a claimant's work capacity. Here, Plaintiff's lump-sum award, which he approved, says as much:

> The employee received temporary total benefits under § 34 from the date of his injury until December of 1998 when the insurer filed a claim to discontinue those benefits. This matter is currently on appeal by the insurer and this agreement was arrived at prior to the Hear-

ing. The impartial physician, Marc Linson, M.D., indicates that the ongoing discomfort in his back and into his left leg is related to the March, 1998 injury, and that he is partially disabled at this time as a result of same. It is submitted that in view of the above, it is likely that an earning capacity would be assigned to him and that this lump sum is a fair compromise of all benefits to which he may be entitled and is, therefore, in his best interest.

(A.R. at 97.) The compromise nature of Plaintiff's lump-sum award makes it difficult, if not impossible, to prorate a close approximation of the future monthly benefits represented by the award. *See Mann v. Heckler,* 1986 WL 36270, at *2 (D.Me. Mar. 17, 1986) ("[B]ecause the [lump-sum] award was a compromising settlement there is no legal basis for assuming that the settlement was based upon the plaintiff's life expectancy. For all the court knows or the [Commissioner] could determine, the parties may have concluded that the plaintiff's disability claims would not last a lifetime, but only for a specific term of years and reached their settlement based upon that view."), *aff'd,* 802 F.2d 440 (1st Cir.1986). Given these uncertainties, the ALJ's adoption of the previously received periodic rate is not only understandable, but permissible.

■ In any event, the "ultimate responsibility for determining the offset rate is in the hands of the Commissioner, not the states, *see* 42 U.S.C. § 424a(b); so reference to state law may inform the analysis, but does not control it." *Bubnis,* 150 F.3d at 182. Here, for the reasons stated, Plaintiff has not convinced the court that the ALJ committed any error of law. More to the point, Plaintiff has not shown that state law requires the extended proration he seeks or that the ALJ acted improperly when, in accord with POMS, she applied

the previously received periodic rate to the lump-sum award. To the contrary, the ALJ's decision was grounded in substantial evidence.

V. CONCLUSION

For the reasons stated, the Commissioner's motion to affirm is ALLOWED and Plaintiff's motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED.